## ROSEBOOM vs. VAN VECHTEN.

The omission to publish notice of the levying of a fine, as required by the sixth section of the act concerning fines and recoveries, (1 *R. L.* 358,) does not render the fine void.

It may, for that cause, be reversed on error, or set aside for irregularity. *Per* BEARDSLEY, C. J.

As the last proclamation of a fine cannot be regularly made without proof that the notice has been published, the record of the proceedings with a statement of all the proclamations endorsed, is sufficient evidence that notice has been published.

A fine with proclamations levied, according to the act concerning fines, while that act was in force, and five years' non-claim after the title of the remainder-man accrued, bars such remainderman, though within the five years, the act concerning fines was abrogated by the repealing act connected with the revised statutes. (3 *R. S.* 129.)

The levying of a fine was *an act done*, and *a proceeding had*, and by it a *right was established*, within the saving clause of the repealing act, though the time within which a party affected might avoid the fine by action or entry had not elapsed.

If the act had been unconditionally repealed within the period limited for an action or entry, the fine would still have been a valid act. *Per* BEARDSLEY, C. J.

To the valid levying of a fine it is essential that one of the parties to the proceeding should have had a freehold estate in the premises.

Tenant for his own life, or for the life of another, is a freeholder and may levy a fine.

An estate *durante viduetate* is a freehold in the widow and in any one to whom she may convey the land.

If one seized of an estate in land *per auter vie*, or *durante viduetate*, die intestate, the estate vests in the personal representatives.

If an executor or administrator take an estate *per auter vie*, by reason of the intestacy of the party whom they represent, and convey such estate to another, the grantee in such conveyance takes an estate of freehold, and is competent to levy a fine of such land.

A person in the adverse, though wrongful possession of land, holding as owner, has a tortious estate in the land, and is a freeholder *de facto.*

Such an estate though tortious was sufficient to authorize the levying of a fine, which after five years' non-claim, would bar the rights of the remaindermen and of strangers.

Where a widow seized of land *durante viduetate*, the remainder being in her children, conveyed in fee with full covenants, to one who entered and held the land claiming to be owner in fee; and the defendant having entered and held as owner under mesne conveyances from the grantee of the widow, levied a fine with proclamations while the statute of fines was in force; *held* that the fine was valid and barred the remainders.

A fine with proclamations and five years' non-claim bars such estates only as have been divested and turned into rights. *Per* BEARDSLEY, C. J.

The general statute of limitations can only be set up where there has been an actual *ouster* of the freehold. In modern legal phraseology the wrongful freehold of the disseisor is called an *adverse possession.*

Where land is held adversely the party out of possession, although he may be the rightful owner, is incapable of conveying a title to another.

EJECTMENT, tried at the Albany circuit, in April, 1847, before PARKER, Cir. J. The plaintiff sought to recover an undivided fourth part of a lot of land in the city of Albany.

It was proved that Jacob Roseboom died seized in fee of the premises in 1797, leaving a widow—Hester Roseboom—and four children, of whom the plaintiff was one. Shortly before his death, Jacob Roseboom made his will, by which he devised all his estate, real and personal, to his wife, for and during her widowhood; and all the residue of his estate, real and personal, to his four children in fee, as tenants in common.

Hester Roseboom, the widow, on the 15th day of July, 1800, by a deed with full covenants, conveyed the premises in question, in fee, to Guert Van Schoonhoven, who on the 9th day of July, 1806, executed a deed in fee, of the lot, to Leonard Gansevoort. Gansevoort had made his last will in the year 1800, by which

he devised all his estate, real and personal, to his wife, during her life; and after her decease to his two daughters in fee. His wife was made sole executrix. He died in 1810, leaving a widow, and two daughters, one of whom was the wife of Jacob Ten Eyck and the other of the defendant in this suit. The widow took upon herself the execution of the will. In 1814 she, with Jacob Ten Eyck and his wife, executed to the defendant a conveyance in fee of the lot in question. Gansevoort, after the conveyance to him, possessed and occupied the lot as owner; after his death Ten Eyck and the defendant in this suit, occupied the same as owners in the right of their respective wives until the conveyance to the defendant as above mentioned, and after that time and until the commencement of this suit, in 1843, and until the trial of the cause, the defendant was in the actual occupation of the lot claiming to be the owner thereof, under the conveyance to him. Hester, the widow of Jacob Roseboom, was not again married. She died on the 3d day of November, 1826.

In 1824 a fine was levied by the defendant, of this lot of land; and in the proceedings for that purpose Guert Van Schoonhoven was plaintiff, or cognizee, and the defendant in this suit was defendant or deforciant. The proclamations were duly endorsed as having been made—the first on the 6th day of May, 1824, the second on the 17th of August, the third on the 21st of October, in the same year, and the fourth on the 14th day of March, 1825. The proceedings had been duly enrolled and the *foot* of the fine was recorded, as required by law. The deed declaring the uses of the fine bore date May 31, 1824: they were to the defendant in this suit.

The evidence respecting the fine was objected to by the plaintiff's counsel on the grounds, among others, 1. That it had not been proved that *notice* of the fine had been published as required by law; 2. That the parties to the fine were not shown to have had such an estate in the premises as that they could legally levy a fine to affect the interests of those in remainder; and 3. That previous to the expiration of five years from the time the right of entry of the plaintiff accrued, the statute con-

Roseboom *v.* Van Vechten.

cerning fines, which created a bar to a recovery by a remainderman, was repealed by the act of December 10, 1828, which took effect from and after the 31st December, 1829. The objections were overruled. The judge held that the fine was a bar to a recovery by the plaintiff, and on that ground directed a verdict for the defendant, which was rendered accordingly. The plaintiff's counsel excepted.

The cause was twice argued—first at the July term, 1847, after which a re-argument was ordered—and again in January term, 1848.

*J. L. Wendell,* for the plaintiff. 1. There was no proof that a notice of the fine and proclamations had been published in a newspaper printed in the city of New-York and in the newspaper printed by the printer to the state, in conformity with the requirement of the act regulating such proceedings. (1 *R. L.* 360, § 6.) 2. A fine will not affect strangers unless one at least of the parties to it has an estate of freehold in the premises. 3. A fine, by a tenant for life in possession, will not affect a remainderman, unless previous to the fine the estate in remainder has been divested or displaced. 4. To give effect to a fine against strangers, the conusor must have acquired, either before levying the fine or by the operation of the fine itself, a possession adverse to and inconsistent with the estate sought to be barred. 4. Such adverse possession can be obtained by a tenant for life, only by a feoffment made previous to the fine, divesting the estate sought to be barred, and accepting a conveyance from the feoffee. 5. Such adverse possession cannot be obtained by a tenant for life by the mere operation of the fine, the possession being the possession of the remainderman, and the mere levying of the fine working no change of possession. Without a change of possession there is no disseisin. 6. A fine with proclamations, operates as a bar by non-claim, only where there is an adverse possession grounded on the *ouster*, and in case of freehold, by disseisin of the rightful owner. 7. Previous to the expiration of five years from the time the plaintiff's right

of entry accrued, the statute concerning fines was repealed. The bar had not then been created, and the authority thus to create a bar having been taken away, no bar was ever created. (3 *R. S.* 130, 132, *No.* 93.)

*D. McMartin & C. L. Jenkins,* for the defendant.

*By the Court,* BEARDSLEY, Ch. J. If the plaintiff had a valid title to this land at any time, it became such on the death of his mother in 1826; and, as the present action was commenced in 1843, his title could not have been barred by the general statute of limitations, for that requires twenty years. (2 *R. S.* 292, *art.* 1.) But in 1824 a fine was levied of this land, proclamations being duly made in that and the next year thereafter; and this action not having been commenced within five years after the plaintiff's right accrued in 1826, it was held, at the circuit, that the fine was a conclusive bar to a recovery, although the title would otherwise have been complete. Several objections were made to the admission of evidence of the fine, or rather to the effect of evidence already given and such as was offered on that subject.

The first objection was that notice of the fine did not appear to have been published as required by law. (1 *R. L. of* 1813, *p.* 360, § 6.) At common law such notice was not required to be published, and it was first directed to be given by an act passed in 1808. (*Laws of that year, ch.* 219, § 2.) The statute is peremptory in declaring that notice shall be published, and an omission to comply with this requirement would have made the fine irregular. It might, perhaps, have been reversed on error, or set aside on motion; (5 *Cruise's Dig.* 276, *ch.* 14;) but clearly it cannot, for any such omission, be held void. There is, however, another answer to this objection, for the evidence was quite conclusive that notice had been duly published. By the statute fines were required to be proclaimed in open court at four different terms thereof, the last of which proclamations, according to the words of the provision, was to be made "after

Roseboom *v.* Van Vechten.

the court is satisfied that notice has been given as aforesaid." (1 *R. L.* 360, § 7.) The four proclamations are shown by the endorsements, which are matters of record, (5 *Cruise*, 98, § 79,) to have been duly made, the last in March, 1825; and as this could not, regularly, have been made until the court was satis- fied that notice had been duly published, such final proclama- tion must be taken as competent and sufficient evidence that notice had been given as the law required.

Another objection made by the defendant's counsel, was founded on the repeal of the statute under which this fine was levied, by an act passed the 10th of December, 1828, to take effect from and after the close of the year 1829. (2 *R. S.* 779; 3 *id.* 129, 132, *No.* 93 *on the last page.*)

By the act concerning fines the plaintiff had five years after his right of action accrued within which to bring suit. (*Supra*, § 7, 1 *R. L.*) The plaintiff's right in this case accrued in 1826, and as the statute which allowed the term of five years was repealed before that period had expired, it is insisted the fine cannot be set up as a bar to the action. I think this objection cannot be sustained: it seems to me to be founded as well on a misapprehension of the nature and effect of a fine with proclamations, as of the saving provisions in the repealing statute.

At an early period of the common law, the usual mode of conveying land was by a charter of feoffment with livery of seizin. (2 *Bl. Com.* 310; 3 *Prest. on Abst. of Tit.* 110, 11; 1 *Shep. Touch. by Preston*, 203, 4; 4 *Cruise's Dig.* 55, *ch.* 4.) These were entirely effectual for the purpose of the transfer, and to which they gave no slight degree of notoriety. Still the charter of feoffment was liable to be lost or destroyed, and, owing to the death or absence of attesting witnesses, proof of its execution must frequently have been found inconvenient if not impracticable. To guard against these difficulties, by se- curing record evidence of the transfer of title, and to fortify that title by the judgment of a court of justice upon the right, fines were resorted to and became a common assurance in the

transfer of real property. Originally they were founded on contested suits commenced and pending between litigant parties; but in modern times, while fines were allowed, (which they are not now, having been abolished in England as well as in this state,) the proceeding, so far as respects an actual controversy between the parties to the fine, was entirely fictitious. Between such parties and all persons claiming under them, it was an effectual mode of adjusting the title; and as to others, not parties or privies to the fine, it created a short bar to their rights. The doctrine of fines is thus stated in a note to *Co. Litt.* (*p.* 121, *a,* note 171.) "In Glanville's time they were really amicable compositions of *actual* suits. But for several centuries past, fines have been only so in name, being in *fact* fictitious proceedings, in order to transfer or secure real property by a mode more efficacious than ordinary conveyances. What the superiority of a fine in this respect consists of, will best appear by stating the chief uses to which it is applied. One use of a fine is *extinguishing dormant titles,* by shortening the usual time of limitation. Fines, being agreements concerning lands or tenements solemnly made in the king's courts, were deemed to be of equal notoriety with judgments in writs of right; and therefore the common law allowed them to have the same quality of barring all who should not claim within a year and a day. (*See Plowd.* 357.) Hence we may probably date the origin and frequent use of fines as feigned proceedings. But this puissance of a fine was taken away by the 34 Ed. 3, and this statute continued in force till the 1 R. 3, and 4 Hen. 7, which revived the ancient law, though with some change, proclamations being required to make fines more notorious, and the time for claiming being enlarged from *a year and a day to five years.* (*See* 34 *E.* 3, *c.* 16; 1 *R.* 3, *c.* 7; 4 *H.* 7, *c.* 24.) The force of fines on the rights of strangers being thus regulated, it has been ever since a common practice to levy them merely for better guarding a title against claims, which, under the common statutes of limitation, might subsist, with a right of *entry* for twenty years, and

with a right of *action* for a much longer time. Another use or effect of fines is barring estates tail." "A third effect of fines is, passing the estates and interests of married women in the inheritance or freehold in lands and tenements." "Such are the *three* chief effects, by reason of which fines, no longer used, according to their original, as recorded agreements for conclusion of *actual suits,* have been changed into and are still retained as *feigned* proceedings." "The virtues of a fine, in the three points of view we have examined it, namely, to extinguish dormant titles, to bar the issue in tail, and to pass the interest of *femes covert ;* these constitute the more *peculiar* qualities, on account of which it is most usually, if not always, resorted to." According to Cruise, the plan adopted to effect these objects was this. "A suit was commenced concerning the lands intended to be conveyed ; and when the writ was sued out, and the parties appeared in court, a composition of the suit was entered into, with the consent of the judges, whereby the lands in question were declared to be the right of one of the contending parties. This agreement being reduced into writing, was enrolled among the records of the court, where it was preserved by the proper officer ; by which means it was not so liable to be lost or defaced as a charter of feoff-ment ; and being a record, would at all times prove itself. It had also another advantage ; that being substituted in the place of the sentence which would have been given, in case the suit had not been compounded, it was held to be of the same nature, and of equal force, with the judgment of a court of jus-tice. (5 *Cruise's Dig. p.* 64, §§ 4, 5 ; *p.* 101, §§ 1, 2 ; *p.* 276, § 1.)

It was called a fine because the effect was to put a final end to all suits and controversies concerning the land to which the fine had reference. (*Com. Dig. Fine (A.) ; Plowd. Com.* 368, 9 ; 2 *Bl. Com.* 349 ; 5 *Cruise's Dig. p.* 66, § 8.) As to parties this was at all times the immediate result of levying a fine, for upon every such person, as well as upon privies, it operates as an absolute estoppel. (2 *Bl. Com.* 355, 6 ; 5 *Cruise's Dig.*

Roseboom *v.* Van Vechten.

199, § 2, *p.* 251, § 7; 1 *Shep. Touch.* 14, (68,) *pp.* 20, 30.) Its full effect at common law, not only in regard to parties and privies, but also as to strangers, is summed up in these emphatic words by the statute 18 Ed. 1—" the fine is so high a bar, and of so great force, and of a nature so powerful in itself, that it precludes not only those who are parties and privies to the fine, and their heirs, *but all other persons in the world,* who are of full age, out of prison, of sound memory, and within the four seas, the day of the fine levied; unless they put in their claim on the foot of the fine within a year and a day." (2 *Bl. Com.* 353, 4; 1 *Shep. Touch. p.* 6; *Co. Lit.* 262, *a, b ;* 2 *Inst.* 510, 516, 518.)

It is not requisite to dwell longer on the puissant nature and effect of fines at common law, for this was a fine with proclamations levied under the act concerning fines and recoveries, passed April 5, 1813. (1 *R. L.* 358.) The *seventh* section of this statute declares that proclamations being had and made as therein directed, " the fine shall be a final end, and conclude as well privies as strangers to the same, *except* women covert, not parties to the same fine, and every person then being within the age of twenty-one years, in prison, or out of this state, or not of sound mind at the time of the said fine levied, not parties to such fine ; *saving to every person and persons,* and to their heirs, other than the parties to the said fine, such right, claim and interest, as they have to or in the said lands, tenements or other hereditaments, *at the time of such fine engrossed,* so that they pursue their title, claim or interest, by way of action or lawful entry, within *five years next after the said proclamations had and made ;* and saving also to all persons such action, right, title, claim and interest, in or to the said lands, tenements, or other hereditaments, as *first shall grow, remain, descend or come to them, after the said fine engrossed, and proclamations made,* by *force* of any gift, or by any other cause or matter had and made *before the said fine levied,* so that they take their action or pursue their said right or title according to law, within five years next after such action, right,

Roseboom *v.* Van Vechten.

claim, title or interest, to them accrued, descended, fallen or come." There is also a general saving of the rights of women covert, not parties to the fine, and of infants, persons in prison, out of the state, or of unsound mind, who are allowed five years after the termination of such disability or ground of exemption from the ordinary operation of a fine.

The exceptions last referred to are inapplicable to the present case, for this plaintiff was not of unsound mind, out of the state, in prison, an infant, or a feme covert. He falls within the second saving clause in the section, for his right was founded on the will of his father who died in 1797, but which right *first came* to the plaintiff on the death of his mother in 1826, after said fine had been levied and proclamations duly made. As to the plaintiff, therefore, the fine was a final and conclusive bar, by the very terms of the statute, unless its repeal prevented the fine from having that effect.

The fine was an "*act done*," that is completed, long before the repeal of the statute under which it was levied, for the final proclamation was made in March, 1825, and the repeal did not take effect until the close of the year 1829. That this "*act done*," would, but for the repeal of the statute, have been a bar to the present action, will not be questioned by any one; and such *acts* are saved to their full extent by the repealing statute. The *fifth* section of that act is in these words: "The repeal of any statutory provision by this act, shall not affect any act done, or right accrued or established, or any proceeding, suit or prosecution had or commenced in any civil case, previous to the time when such repeal shall take effect; but every such act, right and proceeding, shall remain as valid and effectual as if the provision so repealed, had remained in force." (3 *R. S.* 155.) The fine was not only an "*act done*," within this provision, but a *right* was thereby established. So also it was such a *proceeding* had, as the section refers to, and therefore, in the words of the provision, the fine "shall remain as valid and effectual as if the provision so repealed had remained in force."

If the repeal of the statute concerning fines had been absolute and unqualified, there would have been little difficulty in maintaining that this fine remained of the same force and effect that it would have had, if a repeal had never been thought of; but under the saving provisions in the repealing act the point is quite too clear to admit of debate or doubt. If this fine, but for the repeal, would have been a bar to the action, it is so still; it therefore only remains to examine the other objection to its validity, to wit, that the parties thereto had not such an estate in the land that they could legally levy a fine to affect the rights of this plaintiff.

The plaintiff was not a party or a privy to this fine, but a stranger; (2 *Bl. Com.* 355, 6;) and in order to make it a bar to his title, one of the parties must have had a freehold estate in the land when the fine was levied. If neither had such an estate, the fine, as to the plaintiff and all others not parties or privies, was of no effect, and might be avoided by pleading *partes finis nihil habuerunt.* This plea was allowed by the statute; (1 *R. L.* 361, § 7;) and the principle stated is perfectly settled. (*Saffyn's case,* 5 *Rep.* 123, *b. ;* 2 *Bl. Com.* 356, 7; 1 *Shep. Touch.* 13, 14; *Burton on Real Prop.* 29, *n.* 96; *Watk. on Con.* 188, 253; 2 *Inst.* 523; 5 *Cruise's Dig.* 130, § 1; *p.* 135, § 20; *p.* 292, § 55 *to* 57; *Davies* v. *Lowndes,* 1 *Bing. N. C.* 597 ; 5 *id.* 173.)

Tenant for his own life or for that of another is a freeholder, and may levy a fine which will bind remaindermen and other strangers. Such a fine divests and displaces the reversion or remainder, leaving only a right of entry in the reversioner or remainderman. (2 *Bl. Com.* 356, 274; 1 *Shep. Touch.* 13, 14; 5 *Cruise's Dig.* 252, § 11 ; 1 *Inst.* 251, *a, b ;* 2 *Ros. on Actions,* 499; 2 *Prest. on Abst. of Tit.* 317, 335 ; 1 *Saund.* 319, (1 ;) *Facus* v. *Salisbury, Hard.* 400; *Goodright* v. *Forrester,* 8 *East,* 552 ; *S. C.* 1 *Taunt.* 587 ; *Roe* v. *Power,* 1 *New Rep.* 1, 31 ; *Earl of Pomfret* v. *Lord Windsor,* 2 *Ves. sen.* 481, 2.)

Under the will of Jacob Roseboom, his widow acquired an estate *durante viduitate* in this lot of land. That was an es-

tate for her life, determinable on her ceasing to be such widow, and during its continuance was a freehold. (4 *Kent*, 26 ; 1 *Inst.* 42, *a ;* 1 *Cruise's Dig.* 115, § 8 ; *Watk. on Convey.* 30 *to* 35.) In the year 1800, the widow, Hester Roseboom, executed a deed in fee, of this land, to Guert Van Schoonhoven, which, although it did not give him a fee simple, as the grantor had not such an estate, was effective to transfer the life estate of the grantor to the grantee. In 1806, Van Schoonhoven made a deed in fee, for the same land, to Leonard Gansevoort, who thus acquired a freehold estate therein for the life of the widow Roseboom. Gansevoort died in 1810, having made his will in 1800, by which all his estate, real and personal, was, in terms, devised to his wife for life, and she was made sole executrix of the will. This will being made before the devisor had any interest in the land now in question, it did not pass by the will, but vested in the widow as executrix. (1 *R. L.* 365, § 4 ; 1 *K. & R.* 178, § 4 ; *Doe* v. *Robinson,* 8 *B. & C.* 296.) In 1814, the widow of said Gansevoort united with two other persons in a deed of this land, in fee, to the present defendant, who thereby acquired a valid title to said land, for the life of the widow Roseboom. She did not die until 1826, having remained a widow since the decease of her husband, Jacob Roseboom, and, as the defendant had not conveyed his interest in said land, he had a freehold estate therein when the fine was levied in 1824. The defendant was therefore competent to levy this fine, and the proclamations being completed in 1825, it became effective against the plaintiff, whose right to bring suit accrued in 1826. This action was not brought until 1843, more than five years after the right accrued. The fine was therefore, an insuperable bar to a recovery.

There is another ground on which the validity of this fine may be upheld. We have seen that when it was levied, the defendant had a rightful freehold estate in the land for the life of the widow Roseboom. But although such was his right, it was not the estate he claimed to have, for that extended to the entire fee. This claim was founded on a deed which assumed

to convey to him such an estate, and he accordingly occupied and enjoyed the land as absolute owner. Such being the true character of his possession, it was wholly inconsistent with the existence of any other cotemporaneous estate in another person, and was necessarily hostile to all others, for two persons cannot, at the same time, be seized adversely to each other of the same land. Every person in the adverse and wrongful possession of land as owner, whether such possession had its origin in disseisin, abatement, intrusion, discontinuance or deforcement, "all of which expressed at common law different modes of substituting a freeholder by wrong for one by right," (*note to* 2 *Smith's Lead. Ca. p.* 398,) has a tortious estate and is a freeholder *de facto*. (2 *Bl. Com.* 166 *to* 179; *Chit. on Desc.* 341, § 6; *Note to* 2 *Smith, sup.* ; 2 *Arch. N. P.* 300, 1, 2; 1 *Ros. on Actions,* 61, 2, 3, 502; 1 *Inst.* 2, *a,* 277.; *Arch. Cr. Pl.* 6 : 1 *Chit. Gen. Pr.* 374; 3 *Steph. Com,* 482; 2 *Prest. on Abst. of Tit.* 292; *Jackson* v. *Demont,* 9 *John.* 55; *Bradstreet* v. *Huntington,* 5 *Pet.* 402; *Jackson* v. *Todd,* 2 *Caines,* 183; *Prescott* v. *Nevers,* 4 *Mason,* 326; *United States* v. *Aredondo,* 6 *Pet.* 740; *Willison* v. *Watkins,* 3 *id.* 43; *Ewing* v. *Burnet,* 11 *id.* 41; *Zeller's Lessee* v. *Eckart,* 4 *How.* 289; *Small* v. *Procter,* 15 *Mass. R.* 495.) When this fine was levied the defendant was therefore in the actual seizin of the fee, although it was tortiously acquired. He was in the seizin, or, in other words, was possessed of an estate of freehold in the land; (*Vanderheyden* v. *Crandall,* (2 *Denio,* 21;) and it was a freehold estate of inheritance or a fee, for as a wrongdoer he could acquire nothing less. "Wrong," says Lord Hobart, "is unlimited and ravens all that can be gotten." (*Hob.* 323.) Such an estate, although tortious, is sufficient to authorize the levying of a fine which, after five years non-claim, will bar the rights of remaindermen and all other strangers. (1 *Shep. Touch.* 13; 5 *Cruise's Dig.* 130, § 1; *p.* 135, § 20; *p.* 136, § 26; *Com. Dig. ed.* 1825, *Fine B. note h.*)

In the case of *Davies* v. *Lowndes,* (5 *Bing. N. C.* 161,) which was a writ of right, tried at the bar of the court of com-

Roseboom *v.* Van Vechten.

mon pleas, Tindal, C. J. charged the grand assize as follows : " I was about to tell you what the condition of a party who levies a fine should be in order to give it effect or validity. Your tenant can never levy a fine so as to injure you the landlord : and if a party receives possession of an estate through another for a term of years, a fine levied by such a person would be merely void : a fine levied by a stranger to the estate, who had nothing to do with it, would be merely void. It would be a singular thing if any body of laws would allow such a proceeding as that two persons, by collusion between themselves, might go through a process in a court of justice which would deprive the possessor of his right to the estate. It is necessary, therefore, in order that a fine may have its validity, that the person who levies the fine should have a freehold estate, either by right or by wrong. If he turns out a lawful possessor of it, if he has committed a disseisin, he has what is called a wrongful freehold ; and if the party entitled has not claimed within five years after the fine has been levied, that would be a bar to him. Or if a person has been in by right adversely to the rest of the world, and asserting the dominion to be his own, and levies a fine, after the proclamations have been made, and five years have expired, any dormant or latent claim would be equally barred ; and therefore the question for you to determine will be, whether Mr. Selby, at the time when this fine was levied in Trinity term, 1784, was in possession of this estate to which the fine relates, having entered upon it and claiming it, and exercising the right to it as his own. If he was so, he had such an estate as would make a fine levied by him a fine available at law." After adverting to the evidence which tended to show that Mr. Selby was for many years in possession of this estate as receiver of the court of chancery, but which receivership was brought to a close in 1783 by a decree of that court, and from which time he remained in possession in the character of owner, the chief justice proceeded in his charge in this manner : " As to this, therefore, the second question will be, in order to maintain the validity of the fine, are you satisfied that at the time the fine

was levied he had entered upon the estate, and claimed the dominion of it as his own ? If it was not so, if he was still in the character of receiver, or in any other character, then he would not have the freehold in himself, and then the fine would not be available ; but if he was, at the time the fine was levied, receiving rents, and exercising dominion over it, as a property which he claimed to himself, I scarcely know how to put it in any other way than that there was a sufficient valid seizin of the freehold in him to qualify him to pass a fine, which would have its full operation."

This charge was delivered on the second trial of the cause. On the first trial the charge, on this part of the case, was to the same effect; (1 *Bing. N. C.* 597 ;) and although the judgment of the court of common pleas which followed that trial was reversed in the exchequer chamber, the reversal was on a different ground, for upon this point it was held that the question had been most accurately left to the grand assize. (4 *id.* 478.) The charge on the second trial was also brought in review before the court of exchequer chamber, and its correctness, on this point, was again affirmed. (6 *M. & G.* 471.) So far, therefore, as respects the present question, this charge may be said to have received the sanction and approval of all the English judges of that period ; and it is decisive on the point that if this defendant, when the fine was levied, was in the actual possession of the land, exercising dominion over it in the character of owner, he had a freehold estate therein although it might be wrongful, and was therefore fully competent to levy the fine. That such was the true character of the defendant's possession, admits of no dispute. In 1814 he received a deed of the land in fee simple, and from that time occupied and held it as owner. His possession in 1824, when the fine was levied, was unequivocally of this character; he was therefore, at that time, a freeholder *de facto*, whatever his real right may have been, and the fine was consequently valid against the plaintiff.

There are several reported cases in which the attempt was made to uphold fines on the ground of an adverse possession

in the conuzor at the time of levying the fine, but they were held invalid as such possession was not shown to exist. (*Doe* v. *Perkins*, 3 *M. & S.* 271 ; *Doe* v. *Davis*, 1 *C. & P.* 130 ; *Hall* v. *Doe*, 6 *B. & Ald.* 687 ; *Doe* v. *Gregory*, 2 *A. & E.* 14 ; *Doe* v. *Lawson*, 8 *B. & C.* 606 ; *Doe* v. *Davis*, 12 *Price*, 766 ; *Peaceable* v. *Read*, 1 *East*, 568.) It may be thought that an adverse holding was established in some of these cases, and that they were therefore not correctly decided. Suggestions to this effect have been made ; (*Note to* 2 *Smith's Lead. Cas. supra ;* ) but the doubt was as to the matter of fact, and not in regard to the legal principle which had been held applicable to the case. If a tortious freehold existed the fine was conceded to be valid ; and, on the contrary, if such seizin had not been acquired the invalidity of the fine was not denied.

A fine with proclamations and five years non-claim, bars such estates only as have been divested and turned to a right, for he who remains in the seizin of the estate "cannot be put to his action, entry, or claim, for he has that which the action, entry or claim would give him." (*Margaret Podger's case*, 9 *Rep.* 106, *a ; Saffyn's case*, 5 *id.* 123, *b ;* 5 *Cruise's Dig.* 265, §§ 5 *to* 8.) Nor can the general statute of limitations be set up unless there has been an actual ouster of the freehold. It runs only in favor of a party who is himself seized, either by right or by wrong, and against him whose freehold has been divested although he may still have the right of possession and of property. " The statutes," says Mr. Preston, " never run against a man while he continues in the seizin ; and therefore a man must be ousted of his term or disseized of his freehold, before the statute of limitations will have any operation against him. In modern phraseology this is called adverse possession ; and by adverse possession must be understood, as far as respects estates of freehold, a seizin under a wrongful estate." (2 *Abst. of Tit.* 357. *See also* 2 *Roscoe on Actions*, 502, 3 ; 2 *Smith's Lead. Cas.* 396, *note ; Blanch. on Lim.* 8.)

Every person holding lands adversely may set up the statute of limitations as a bar to any one out of possession. This is allowable because the person so in possession has a freehold

estate, and he who is out of possession, although his right of property and possession may be incontestable, is not seized of any estate whatever; his interest being cut down to a right, which may be enforced by entry or action, according to circumstances. In such a case the possessor, as he may rely on the statute of limitations to create a bar, might also, while fines were allowed by law, have shortened the period of limitation by levying a fine with proclamations; the estate of which he was so seized, being sufficient for one purpose, would be equally so for the other. No one can for a moment doubt that the statute of limitations began to run against the plaintiff in this case, on the death of his mother in 1826, for then his right of entry and action accrued. The defendant was at that time in possession as absolute owner, as he had been from 1814. Holding in that character in 1824, he was competent to levy the fine, for he had a tortious freehold, and as the same estate existed in 1826, when the plaintiff's right of entry accrued, the statute of limitations from that moment began to run against it.

When land is held adversely, the party out of possession, although his right may be valid, is incapable of conveying it to another. It is against the general policy of the law to allow a right of action to be transferred, for it leads directly to maintenance and oppression. "Nothing in action, entrie, or re-entrie, can bee granted over," says Lord Coke, "for so under colour thereof pretended titles might bee granted to great men, whereby right might bee trodden downe, and the weake oppressed, which the common law forbiddeth, as men to grant before they be in possession." (1 *Inst.* 214, *a; Whitaker* v. *Cone,* 2 *John. Cas.* 58; *Williams* v. *Jackson,* 5 *John.* 498; *Bradstreet* v. *Huntington,* 5 *Pet.* 436; 2 *Smith's Lead. Cas.* 397, *note.*)

An adverse possession is not necessarily wrongful, for a grantee in fee, as he holds for himself, is in possession adversely to his grantor. (4 *Pet.* 506; 5 *id.* 439.) But in every case where a wrongful adverse possession exists, a tortious freehold is acquired. If the possession originated in an actual disseizin of the true owner, the conclusion stated would not be denied by any one; but whether it began in that, or in some other mode.

can make no difference in this respect, ·the occupation being of
such a character as to come up to the legal idea of an adverse
possession.

On either of the grounds stated, to wit, that the defendant
was tenant for the life of the widow Roseboom, or that he had
a tortious freehold in the premises, this fine may be upheld as
a bar to the plaintiff's title.

New trial denied.