Gray, J.
 

 {Dissenting)
 
 — The first question here pre-
 

 sented, is upon the sufficiency of the: affidavit of Aaron B. Sheldon, to confer jurisdiction upon the surrogate. The petition which it was the object of the affidavit to verify, is full and sufficient; the alleged defect is in the
 
 *485
 
 affidavit. That states “ that the material facts, stated in the petition, are true, according to the best knowledge and belief” of the petitioner. *The question, being jurisdictional, is not whether the surrogate erred as to the sufficiency of the proof to establish the facts stated in the petition, but whether the evidence had a tendency to establish them. The facts and circumstances upon which the knowledge and belief of the petitioner was founded, were not, as in an application for an attachment, required to be stated, and hence, the numerous cases adjudging affidavits insufficient to confer jurisdiction to issue an attachment, are not analogous, nor was the surrogate, at that time, as he is now, required to examine the petitioner on oath, touching the time and place of the death (2 B,.. S., 2d ed., 17, § 26) ; but
 
 satisfactory proof
 
 was all that was required (1 R. L. 445, § 6).
 

 The affidavit is in. accordance with the forms in use when it was made, except that it omits the word information. (Bridgen’s Surrogate 115.) The assertion that the material facts were true, to his best knowledge and belief, very clearly implied, that he had knowledge, in which he reposed confidence, and which induced his belief in the truth of’ the facts stated.- The petition stated, that the deceased left no last will and testament,
 
 that he had heard of, or had been able to discover.
 
 This is substantially a statement, which, by the affidavit, is positively affirmed to be true; that from such examination as he had been able to make, the deceased had not left any last will and testament.'
 

 The effort to discover a will, would scarcely have been made, except upon a clear conviction of the death of its author; besides, accompanying this petition, was the renunciation of the widow of the deceased of her right to administer, and recommending the petitioner as a fit and proper person to be appointed administrator. Whether this evidence would have been held sufficient,
 
 *486
 
 upon appeal, is not now material; that it had a tendency to prove the facts stated in the petition, is quite clear. The error then, if any, was mere error, and not a jurisdictional defect.
 

 The plaintiff’s next objection is, that the petitioner, ^ *kein& nex^ kin ^le deceased, letters of administration should not have been granted to him, without first citing the next of kin to show cause. (1 R. L. 445, § 6.) The widow had renounced, and recommended the petitioner as administrator; the necessity of notice, so far as she was concerned, was superseded by her own act; the next of kin were all infants, and, therefore, not entitled to administration, and no provision was then (as is now) made in favor of their guardians. The object of the statute, in requiring citations to be issued, was to' secure administration to those who had the prior right, and might desire to claim it. When this statute was revised, its phraseology in this particular was changed, and its reason and spirit made more apparent. (2 R. S., 2d ed., 19, § 35.) I see no valid objection, therefore, to the jurisdiction of the surrogate to grant administration as he did.
 

 We now come to the order made by the surrogate for the sale of the lands in controversy, and the question is upon the jurisdiction of the surrogate to make that order. By the statute in force when the order was made, the surrogate was required, upon the presentation of the petition for sale, to make an order directing all persons interested in the estate, to appear before him, at a day and place to be specified in the order, not' less than six, nor more than ten weeks, after the day of making the order, to show cause why sufficient of the real estate, of which the intestate died seised, should not be sold, to pay his debts; which order was required to be
 
 immediately
 
 published, for four weeks, successively, in two or more public newspapers, printed in this- state, one of which was required to be published in the paper, if any,
 
 *487
 
 in the county where administration was granted. In the case under consideration, the petition for the sale of real estate was presented to the surrogate of Cayuga county, who, on the 6th day of September 1826, at Auburn, made an order, directing all persons interested in the estate, to show cause before him, at his office, in Ledyard, on the 19th day of ^October following, why the real estate of the intestate should not be sold to pay his debts; this order was published in two public newspapers printed in Auburn.
 

 The first publication in one, was on the 20 th, and in the other, on the 27th of September; in each paper, it was published four weeks, successively, but whether the last publication was before or after the 19th day of October, does not appear. The affidavits of publication were each made on the 23d of October, four days after the time appointed for showing cause. The position assumed by the defendant, and sanctioned by the court below, was, that a publication of the order for four weeks, successively, immediately preceding the day for showing cause, was all that the statute required, and that its requirements in that respect were satisfied, by a publication once in each week, for four weeks, successively, previous to the day appointed for showing cause; notwithstanding the first publication was less than four weeks prior to that day. If the position assumed be sound, a first publication on Saturday of the first of the four weeks, and a fourth on Monday of the fourth week, for the Tuesday following, would be a compliance with the law, and thus a notice, which the legislature provided should be as near six weeks, as an
 
 immediate
 
 publication of the order after it was made would make it, would be frittered into a notice of twenty-four days.
 

 Words of a statute, if of common use, are to be taken in their natural, plain, obvious and ordinary signification and import. (1 Kent. Com. 461.) Every word should be intended to have some force and effect (22
 
 *488
 
 Pick. 573), and should be so construed, if possible, that no word should be superfluous, void or insignificant.
 
 (Hutchen
 
 v.
 
 Niblo,
 
 4 Blackf. 148.) The words of this statute are plain. It may, however, have been impracticable to comply with its requirements by an immediate publication of the order, for the reason, that no newspaper, accessible to the surrogate, may have immediately thereafter been printed. The statute should not, for that reason, be so construed as to render the word “
 
 immediately”
 
 ^superfluous, insignificant and void; but it should .be given, if possible, some force and effect.
 

 The object of the legislature, doubtless, was, to secure the earliest possible publication of the order, that those interested should have as near six weeks’ notice, as the earliest practicable publication would allow. The construction given by the court below, and insisted upon here, as the true one, is precisely the same that it would have been, had the word immediately been omitted by the law-makers. It is neither allowed meaning nor . force, but by construction, is rendered insignificant and void. The order and publication were both made at Auburn; the publication should have succeeded the order, at the earliest publishing day, after the order was made. The fact that an immediate publication might have been impracticable (and whether it was or not there is no evidence) furnishes no reason for disregarding the obvious intention of the law, by omitting to secure its publication at the next publishing day. It was insisted by the defendant’s counsel, that the surrogate had adjudged upon the, evidence before him, that the order to show cause was
 
 immediately
 
 after it was made, published for four weeks, successively, and that the defect in publication, if any, could only be taken advantage of by appeal. The surrogate, it is true, in a preamble to his order for sale, recited such a publication; that, however, is no evidence of the fact. The
 
 *489
 
 original proof of tlie publication is the only competent evidence.
 
 (Striker
 
 v.
 
 Kelly,
 
 2 Denio 323;
 
 Varick
 
 v. Tall
 
 man,
 
 2 Barb. 113;
 
 Beekman
 
 v.
 
 Bingham,
 
 ante, p. 366.)
 

 The proof of publication before the surrogate, establishes the fact, that the order was published, once in each week, for four weeks, successively, but it has not a tendency to prove that it was published immediately, or at the earliest publishing day after it was made, but proves the reverse. But concede that a publication for four weeks, successively, immediately prior to the day of showing cause would suffice, a ^publication once in each of four successive weeks, prior to that day, would not then satisfy the statute. It must have been published four weeks, and each publication should have been in the week succeeding the other. The statute in this respect is identical with that requiring the publication of notice of an order to the creditors of an insolvent (1 B. S., 2d ed., 778, § 11), except, in the one case, the publication must be six weeks, and in the other, four. In the case of the insolvent, the order was required to be published “ six weeks successively.” Under that statute, it has been adjudged, that the order should have been published the whole of -six weeks, that is during forty-two days.
 
 (People
 
 v. Yates.
 
 Com. Pleas,
 
 1 Wend. 90.) The counsel for the defendant-referred us to
 
 Bachelor
 
 v.
 
 Bachelor,
 
 1 Mass. 256), as bearing upon this point. The order in that case was to have been published “three weeks successively,” and all the court decided was, that a week need not intervene between each publication. The time fixed for showing cause, in that case, does not appear from the report, and hence it does not appear, whether the first publication in that case was three weeks, more or less, before the time for showing cause.
 

 We were also referred to
 
 Roseboom
 
 v.
 
 Van Vechten
 
 (5 Denio 414), as authority for the position that an omission to publish the order as required by law, was error
 
 *490
 
 merely, and not a jurisdictional defect. That case did not turn upon the effect of the omission to publish as required by law, but upon the fact, that publication was made in accordance with the statute. The learned judge who delivered the opinion of the court, in that case, remarked that the omission to publish as directed by statute, would not render the proceeding void; the remark, however, is not sustained by the adjudged cases upon jurisdictional defects in this state. The object of the publication, in that case, as in the one now under consideration, was to give notice to thoe thing required to be done,
 
 Doughty
 
 v.
 
 Hope
 
 (3 Denio 249), and w^ere Powse interested in the proceeding. Notice is the essence of ther *given a magistrate, on certain conditions, to take away the right which another has enjoyed, the statute directing the course of proceeding is not directory.
 
 (Davison
 
 v.
 
 Gill,
 
 1 East 64.) The rule upon this subject is well stated by Cowen, J., in
 
 Atkins
 
 v.
 
 Kinnan
 
 (20 Wend. 249), that “where steps are authorized by statute in derogation of the common law, by which.the title of one is to be divested, and transferred to another,
 
 every requisite, having the least semblance oj benefit
 
 to the former, must be complied withand the officer or inferior court invested with the power thus to transfer the title of one to another, must pursue with
 
 precision
 
 the course prescribed by law, or the act is invalid.
 
 (Bloom
 
 v.
 
 Burdick,
 
 1 Hill 141, and cases there cited.) See also upon this point,
 
 Ford
 
 v.
 
 Walworth
 
 (15 Wend. 449) and
 
 Rea
 
 v.
 
 McEachron
 
 (13 Id. 465).
 

 These cases are full to the point, that an heir shall not be deprived of his inheritance by a surrogate’s sale, unless all the requirements of the statute regulating the proceedings, are shown to have been fully complied with. Unless the word “immediately” be regarded as insignificant and virtually blotted out, there is an entire absence of evidence, that the statute, requiring an immediate publication of the order, has been complied
 
 *491
 
 with, literally, or according to its spirit, by a publication of the order, either immediately, or at the earliest practical day after it was made. This was the mode pointed out for obtaining jurisdiction oyer the parties interested in the inheritance; a compliance with it was indispensable to the jurisdiction of the surrogate. It has not been complied with, and the subsequent proceedings, in my judgment, 'are, therefore, void. If the statute could have teen satisfied, by a publication for four weeks successively, it does not place the defendant in any better condition, inasmuch as the publication in one of the two newspapers, was several days short of four weeks prior to the day of showing cause. (1 Wend. 90, cited above.)
 
 [1]
 

 If these difficulties could all be surmounted, and the surrogate helped to jurisdiction, there is no evidence, that he exercised *it on the day appointed in
 

 the order for showing cause. If, therefore, he had jurisdiction, he lost it, by omitting to attend at the time and place specified in the order, and hearing the proofs of the administrator, and other persons interested in the estate, or then designating some other time or place for that purpose. The statute is explicit, in requiring the surrogate to either hear and examine the proofs, on the day specified in the order, or on that day to designate a time and place when he will do so. There is an entire absence of evidence, that he did either; but after a lapse of nearly two months, and on the 8th of December following, his court is opened at Auburn, where an order for -the sale of the premises in question is made.
 

 Judgment affirmed.
 

 [1]
 

 See, to the contrary, Olcott v. Robinson, 21 N. Y. 150.