## MOSHER and ROBINSON *vs.* YOST and STONE.

An assignment of a lease for lives, by the personal representatives of an assignee of the lessee, is void if the premises are, at the time, in the actual possession of persons claiming title thereto adversely. BOCKES, J. dissented.

The assignee of a lease for lives has a freehold estate in the premises, which, upon his death, becomes a chattel real, and the estate passes, as assets, to his personal representatives.

Such personal representatives have an estate in the land, and being entitled to the possession, they may maintain ejectment therefor.

THIS action was commenced for the recovery of the possession of certain premises situated in Oppenheim, Fulton county, and damages for withholding the same from the plaintiffs. The answer contained a general denial, and it also denied the wrongful withholding by the defendants. The action was referred to a referee, and on the hearing before him, the plaintiffs gave in evidence a lease from Goldsbrow Banyar, and divers assignments thereof, vesting the title in James Mautany, who died October 2d, 1857, in the possession of the premises, leaving his wife Lois Mautany him surviving, and leaving also several children, among whom was William. Previous to his decease, James Mautany had published his last will and testament. It was admitted by the

defendants, that said will was not admitted to probate, but was declared to be unproved, and invalid, by the surrogate of Fulton county. Letters of administration were duly issued by the surrogate of Fulton county to Lois Mautany and Robert Stowell, who qualified and acted as administrators of James Mautany. After the death of his father, William Mautany took possession of the farm, claiming to be the owner thereof, by gift from James Mautany. He, on the 16th of December, 1857, sold his interest in the farm (whatever it was) to the defendants, and assigned the lease to them. Lois Mautany, the administratrix, with the approval of Robert Stowell, the administrator, conveyed and assigned the lease of said premises to Willard Stowell, on the 16th day of April, 1858. And on the 21st day of April, 1858, Stowell conveyed and assigned the same premises and the lease thereof, to the plaintiffs in this action. The defendants took possession of the premises, claiming title thereto under their assignment, about the 1st of May, 1858, and occupied during the year; and kept their cattle upon said farm, and took the crops for that year. The value of the use of the premises was shown be $150, for the time the defendants had the possession, and the plaintiffs recovered judgment for possession of the lands and for the mesne profits. The defendants appealed.

*W. Higbie* and *H. Link,* for the appellants.

*Hardin & Burrows,* for the respondents.

ROSEKRANS, J. We need not discuss the question whether the instrument signed by Lois Mautany, in form, passed to the plaintiff the title to the land and lease under which the farm was held, the possession of which is the subject of this action. Conceding that it did, the deed of Mrs. Mautany was clearly void upon the ground that the premises in question were, at the date of that deed, in the actual possession of

the defendants claiming title under an assignment of the lease from William Mautany. The estate of the original lessees was a freehold estate, it being for their lives. (1 *R. S.* 722, *marg.* § 5.) These lessees were still in life. By the assignment or conveyance of that lease the assignee or grantee became the owner of the lands, and held an estate during the life of another. This was the nature of the estate which James Mautany held at the time of his death. The statute declares that it was a freehold estate during his life, but that after his death it became a chattel real. (1 *R. S.* 723, *marg.* § 6.) This estate passed as assets to the administrators of his estate. (2 *R. S.* 83, *marg.* § 6.) At common law, if a man had an estate granted to him (without naming his heirs) for the life of another, and died during the life of him by whose life it was holden, any one who could first enter on the land might lawfully retain it, so long as the *cestui que vie* lived, by right of occupancy. The land did not revert to the grantor, for he had parted with all his interest so long as the one by whose life it was holden lived; it did not escheat to the lord of the fee, for all escheats must be of the absolute entire fee and not of any particular estate carved out of it; and it did not belong to the grantee, for he was dead. It did not descend to the heirs of the grantee, for there were no words of inheritance in the grant; nor could it vest in his executors, for no executor could succeed to a freehold. And if an estate for the life of another was granted to a man and his heirs, and the grantee died, his heir might enter and hold possession, and was called a special occupant as having a special exclusive right, by the terms of the grant, to enter upon and hold the land. The heir was not regarded as taking by descent, and if sued upon the bond of his ancestor he could plead *riens per descent*, as these estates were not liable to the debt of the ancestor. To remedy these evils the statute of 29 *Car.* 2 enacted that such estate *pour autre vie* should be devisable, and in case no devise thereof should be made, the same should be chargeable in the

hands of the heir if it came to him by reason of a special occupancy as assets, by descent, as in case of lands in fee simple, and in case there was no special occupant thereof, it should go to the executors and administrators of the party who had the estate by virtue of the grant, and be assets in their hands for the payment of debts. (2 *Bl. Com.* 258, *&c. and notes. Williams on Ex'rs*, 1 *to* 69. 4 *Kent's Com.* 26.) This statute was enacted in this state, leaving out the provision of the act of 29 Car. 2, as to the special occupant. (1 *R. L.* 3,65, § 4.) It directed that the estate, if not devised, should go to the executors and administrators of the party who had the estate, to be applied and distributed as part of the personal estate. The only object of these statutes was to prevent the land being taken by a special occupant who could not be made liable for the value of the land as heir, in payment of the debts of his ancestor, and to provide for the application of the estate to the payment of the debts of the one who held the estate, or the distribution of it amongst his next of kin. They did not destroy the estate, nor were they designed to have that effect. It is a maxim in law that an estate which once existed must continue to reside somewhere. It cannot be annihilated. (2 *Hill*, 529.) The latter part of the provision of the revised statute, (1 *R. S.* 722, *marg.* § 6,) "that an estate during the life of a third person, whether limited to heirs or otherwise, shall be deemed a freehold only during the life of the grantee or devisee, but after his death it shall be deemed a chattel real," could only have been adopted to characterize the estate for the purpose of passing it to the executor or administrator of the testator or intestate. Clearly it must have been intended that the whole estate should pass to such executors or administrators, and after it came to the executors or administrators it would still be an estate for the life of another, and so a freehold estate. In *Doe ex dem. Blake* v. *Linston*, (6 *T. R.* 291,) Lord Kenyon says, "An estate *per autre vie* partakes somewhat of the nature of personal estate, though

Mosher *v.* Yost.

it is not a chattel interest. It still remains a freehold inter-
est for many purposes, such as giving a qualification to vote
for members of parliament, and kill game, and some others.
A will to dispose of it must always be attested by these wit-
nesses, under the statute of frauds." And in 3 *Russ. R.*
230, it was held that such an estate was a perfect freehold,
even in the hands of the executors of the former owner of
· the estate. Chancellor Kent says, in 4 *Kent's Com.* ` 27,
such an estate is a freehold interest *sub modo,* or for cer-
tain purposes, though in other respects it partakes of the
nature of personal estate." In the hands of the grantee
of the executor or administrator it was the same freehold es-
tate. This was held in the case of *Roseboom* v. *Van Vech-
ten,* (5 *Denio,* 424, 425, 426.) A freehold estate can only be
conveyed by deed. (1 *R. S.* 738, *marg.* § 137. *Watkins
on Convey.* 31.) The referee finds, and concedes in his
opinion, that at the date of the conveyance by Mrs. Mautany
to the plaintiff, the defendants were in actual possession
of the lands, claiming title under the assignment of the
lease from William Mautany. The claim of the defend-
ants, therefore, was of a freehold estate. To constitute an
adverse possession it ·is not necessary that the title under
which the party claims should be a good one, but simply
that he should enter· under color and claim of title exclusive
of any other right. (*Roseboom* v. *Van Vechten,· supra.* 5
*Denio* 426. *Livingston* ` v. *Peru Iron Co.,* 9 *Wend.* 517.)
The possession must be adverse to the one who is entitled
to the possession. (*Clarke* v. *Hughes,* 13 *Barb.* 147. *Vroo-
man* v. *Shepherd,* 14 *Barb.* 450, *and authority cited.* If a
lessee for life or years be ousted of the land by a stranger,
and after ouster and before his entry he surrenders to his
lessor, it is not a good surrender, for he has but a right, at
the time of the surrender. (*Perk.* § 600.) In the case
cited last above, 14 *Barb.* 453, Hand, J. says, "When the
lessee for life is disseised, the rule in relation to surrenders
prevails, and his conveyance is clearly void as a surrender."

Mosher *v.* Yost.

The same rule prevails as to a grant to any other person than the lessor.   The learned referee seemed to think that the administrators of James Mautany could not have maintained ejectment against the grantees of William Mautany.   In this he is clearly mistaken.   They had an estate in the land, and were entitled to the possession ; and this is all that is necessary to maintain ejectment.   An executor may maintain ejectment when the testator had a lease for years, or from year to year, upon an ouster after his death.   (*Williams on Ex.* 748.   *Slade's case*, 4 *Co*. 95.   *Morton's case*, 1 *Ventr.* 30.   *Doe* v. *Porter*, 3 *T. R.* 13.   *Roscoe on Actions relating to Real Property*, 545.   *Doe* v. *Bradbury*, 16 *Eng. Com. Law Rep.* 115.)   The action should have been brought in the name of the administrators of James Mautany.   (2 *Hill*, 529.)   For these reasons the judgment should be reversed, and a new trial granted, with costs to abide the event.

POTTER, J. concurred.

BOCKES, J. dissented; holding that the assignment of the lease, by Mautany's personal representatives, to the plaintiff, was not void by reason of the defendant's adverse possession of the premises ; that the interest assigned was a chattel real, held by the personal representatives as part of the intestate's personal estate.

New trial granted.

[SCHENECTADY GENERAL TERM, January 1, 1861. *Rosekrans*, *Potter* and *Bockes*, Justices.]