CROOKED LAKE NAVIGATION COMPANY, PLAINTIFF, *v.*
THE KEUKA NAVIGATION COMPANY, DEFENDANT.

*Lease taken by the director of a company — when the company cannot claim to be entitled
to it — requisites of an adverse holding which will avoid a conveyance by one not in
possession.*

The plaintiff brought this action to recover the possession of certain land, claim-
ing to be entitled to a leasehold estate therein by virtue of an assignment made in
June, 1883, from the executrix of one Holmes, of a lease thereof owned by Holmes
and expiring March 1, 1884. At the time Holmes acquired title to the lease
in 1878, and until his death in 1879, he was the president, a director and the
principal stockholder of a steam navigation company, which used the premises
in carrying on its business, and paid the rent reserved by the lease until it
failed in 1881. The interest of the company in the premises was sold to the
defendant by the sheriff under an execution issued upon a judgment recovered
against it, and a receiver of the company, appointed in a judgment-creditor's
action, thereafter sold to the defendant all the right, claim, property and demand
which the company had therein. The defendant took possession of the premises
under these conveyances, and has ever since that time occupied and used
the same.

*Held*, that the facts proved did not show that the company had any interest in
the lease acquired by Holmes.

That the holding of the premises by the defendant under the conveyances from
the sheriff and the receiver, was not under such an adverse claim of title as to
render void the assignment of the lease from the executor to the plaintiff.

*Mosher* v. *Yost* (33 Barb., 277) distinguished.

MOTION by the defendant for a new trial, on exceptions ordered
to be heard at the General Term in the first instance.

The action was in ejectment, to recover certain premises situated at
the outlet of Crooked lake or Keuka lake (as it is now called), in the
village of Penn Yan, and used for a steamboat landing and for dock
purposes. It appears that the title was in one Wegener, who leased
them to one Conklin for a term of years ending on the 1st day of
March, 1884. And the latter afterwards, in April, 1878, leased
them to Farley Holmes for the term of five years from the first day
of March then next. Holmes died in November, 1879, leaving his
will, which was admitted to probate and record, and letters testa-
mentary were issued to Jane Holmes, his widow, who was nomi-
nated as executrix by the will, and she afterwards, in June, 1883,
as such, assigned the lease to one Halsey, who, in July following,

assigned the lease to the plaintiff. The defendant took possession of the premises in January, 1881, and alleges a right to the possession paramount to that of the plaintiff. The further facts appear in the opinion. The plaintiff had a verdict.

*William S. Oliver*, for the plaintiff.

*Ralph T. Wood*, for the defendant.

BRADLEY, J.:

The plaintiff claims the right to the possession of the premises as lessee, for years, under the assignment to it of the Holmes lease, which vests in the plaintiff that right unless its operation as a lease to Holmes has been in some manner defeated. The counsel for the defendant contends that plaintiff's action is not supported because, first, Holmes, by reason of his relation to the Lake Keuka Steam Navigation Company at the time he took the lease and afterward, was disabled from taking and retaining any rights under it; that the beneficial interest was in that company and that the defendant in the manner hereafter mentioned acquired the rights of that company. Second. That at the time the assignment of the lease was made to the plaintiff, the premises were in the possession of the defendant claiming under a title adverse to that of the assignor of the lease and that the assignment was therefore void.

When he took the lease from Conklin, Holmes was a stockholder, director and president of the Lake Keuka Steam Navigation Company, and was the owner of most of the capital stock of the company, and the premises were used by the company in operating steamboats on the lake until it ceased to do business. And the rent from time to time due on the lease was paid by the treasurer of the company, who says he "should not have paid it if Holmes had not been the chief stockholder of the company."

The Lake Keuka Steam Navigation Company became insolvent and in January, 1881, its property, including its interest in these premises, was sold by virtue of an execution issued upon a judgment against it. And upon that sale that interest in the premises was purchased for the defendant and a bill of sale to that effect was made by the sheriff to it. And in an action afterwards brought by a judgment creditor of that company against it a judgment was

recovered appointing a receiver of its property and directing him to sell it at public sale. The receiver sold at private sale. "all the right, claim, property and demand," which the Lake Keuka Steam Navigation Company had in the premises, to the defendant in December, 1882, and gave to it a bill of sale to that effect. The defendant went into possession shortly after the execution sale in January, 1881, and has since continued to occupy the premises.

The evidence did not require the conclusion that the Lake Keuka Steam Navigation Company had any interest in the premises. The lease was taken by Holmes individually, and he was under no disability arising out of his relation to the company which defeated his right to become such lessee. He was its president and a managing agent or trustee and could legally do nothing affecting the company inconsistent with such relation which was that of trust and confidence. He could not deal with its property for his personal advantage nor deal with it for such purpose. He could not sell and become the purchaser of its property and retain it as his own. This property was not that of the company, and nothing appears tending to prove that he obtained the lease under circumstances which required him to assume the relation of trustee for his company in respect to it, or which would permit the retention of it by him as his property to impute to him any bad faith or breach of confidence or duty. The manner which the rent was paid did not require the inference that he had taken it for, or surrendered it to, the company. (*Twin Lick. O. Co.* v. *Marbury*, 91 U. S., 587.) It is said that he owned $49,000 of the $50,000 of capital stock. The company had the use of the premises, and no significance is necessarily imputed against Holmes' title by the payment from the funds of the company of the actual expense of the retention of the use of the property, as it does not appear to be unreasonable in amount. The question at the trial was treated as one of law, and it is not necessary now to inquire whether its determination involved any question of fact. (*Barnes* v. *Perine*, 12 N. Y., 18.) It follows that the insolvent corporation had no interest in the premises, and that the defendant acquired none by its purchases at the execution sale and from the receiver.

The question arises whether the plaintiff took anything by the assignment to it of the lease, for the plaintiff must stand on the

strength of its own title. And if the defendant was in possession, claiming the premises under a title adverse to that afforded by the lease, the plaintiff acquired no right as assignee to support the action. (1 R. S., 739, § 147.)

To bring the defense within this statute, the claim must be under some specific title. It is not necessary that such title be valid, but the color of title must purport to convey a freehold estate, and adverse to that under which the plaintiff asserts its right to the possession. (*Crary* v. *Goodman*, 22 N. Y., 170; *Higinbotham* v. *Stoddard*, 72 id., 94; *Dawley* v. *Brown*, 79 id., 390; *Fish* v. *Fish*, 39 Barb., 513; *Chalmers* v. *Wright*, 5 Robt., 713; *Stoddard* v. *Whiting*, 46 N. Y., 627; *Gross* v. *Welwood*, 90 id., 638.) The sale by the sheriff on the execution does not purport to have been of any estate or interest in the land. And if it had, no adverse possession could have been taken under it until the time for redemption had expired and the sheriff's deed had been taken. The bill of sale made by the receiver to the defendant does not purport to convey the fee or any freehold estate. He could not transfer to the defendant any greater interest than the company of whose property he was receiver had, and the defendant can claim no other right than that of holding under that company. (*Hetzel* v. *Barber*, 69 N. Y., 9, 10.) And if it held in subordination to the legal title no right was given by the sale in hostility to that title. The evidence tends to prove that the company was in under Holmes either as tenant or by license, and it could not by any conveyance create a color of title in another adverse to the title under which Holmes and the plaintiff through him held. (*Jackson* v. *Davis*, 5 Cow., 123; *Learned* v. *Tallmadge*, 26 Barb., 444, 454; *Whiting* v. *Edmunds*, 94 N. Y., 309, 314.) The relation of a lessee for a term of years does not permit him or any one holding under him, or by virtue of such right, to create color of title in another adverse to that under which he holds (*Bedell* v. *Shaw*, 59 N. Y., 46), nor can a grantee of a life estate do so in such wise as to give his conveyance the character required to produce adverse possession during the term. Although in such case it may afford the right to claim adverse possession after the termination of the life estate, in support of such right in the grantee, which would be effectual on the expiration of twenty years after that time, for reasons applicable to the grant of a life estate which do not apply to a

lease for years. (*Sands* v. *Hughes*, 53 N. Y., 287; *Christie* v. *Gage*, 71 id., 189.)

There seems to have been no possession of the defendant under claim of title adverse to that under which the plaintiff's assignor held, or adverse to the interest he held at the time of the assignment of the lease to it, within the meaning of the statute.

The case of *Mosher* v. *Yost* (33 Barb., 277), cited by the defendant's counsel, does not support his contention. There was a grant of a life estate *per autre vie*. The lessee died during the life of the *cestui que vie*, and thereupon his son went into possession, claiming to be the owner by gift from his father. The son conveyed his interest and assigned the lease to the defendants, and the plaintiffs claiming under a deed afterwards made by the administrators of the father's estate, brought ejectment, and were defeated on the ground that, as the court held that the deed to the plaintiff came within the statute before referred to and was void. The lessee had by the grant a freehold estate during his life, and at common law it retained that character, although it did not go to his heirs by descent otherwise than as special occupants. It was early treated by the law as a sort of "derelict, to be seized upon by the first occupant who chose to appropriate it." It still being a freehold, could not go to the executors; but by the statute (29 Car., II) it went to the heirs of the tenant as special occupants. (1 Wash. on Real Prop., marg. pp. 93, 153; *Atkinson* v. *Baker*, 4 Durnf. & E., 229.)

It was not at common law deemed devisable; but by our statute it was made so, and if not devised, went to the executor or administrator for distribution as personal estate. (Laws of 1813, chap. 23; 1 R. L., 365, § 4.) And afterwards it was provided that on the death of such tenant the estate should be deemed a chattel real (1 R. S., 722, § 6), and go to the executors or administrators as personal assets. (2 R. S., 82, § 6; *Gillis* v. *Brown*, 5 Cow., 388; *Reynolds* v. *Collin*, 3 Hill, 441.)

But by the result given to *Mosher* v. *Yost* it was there necessarily held that the quality of the estate remained the same as at common law, except for the purposes of its disposition as assets of the deceased tenant. And in that view the occupant was enabled to make his deed effectually purport to convey a freehold estate, so as to give color of title adverse to the plaintiff's grantor

under the claim of which the defendant's possession was supported, and the grant to the plaintiff was, by force of the statute, void. That case is distinguished from this in the character of the estate. The interest involved here was an estate for years which is a chattel real. At common law is was personal estate and by our statute it goes to the executors and administrators. At the common law the tenant for years was not deemed·seized of the land nor vested with an estate in it. He acquired by the lease a right of entry, and when he entered he was not, in the legal sense, possessed of the land but of the term for years. The seisin of the freehold remained in the lessor, and the possession of the lessee was that of the owner of the freehold. But by statute the lessee for years takes an interest treated by designation and for some purposes as an estate in land. (1 R. S., 722, § 1; *Averill* v. *Taylor*, 8 N. Y., 44, 52.) Before the time of Henry VII an action of ejectment could not be sustained by the lessee to recover the term, but since then it might in England and may be in this State. (1 Wash. Real Prop., 291; *Goodtitle* v. *Tombs*, 3 Wilson, 121; *Gardner* v. *Keteltas*, 3 Hill, 332; *Whitney* v. *Allaire*, 1 N. Y., 311.) The transfer of such an interest or estate, or a deed purporting to convey less than a freehold, cannot furnish a color of title adverse to the owner, so as to support the possession under claim of title to it within the meaning of the statute against champerty before mentioned.

We have given attention to and considered all the exceptions appearing in the record. None of them seem to be well taken. The defendant's counsel suggests that the judgment entered in the action is not in conformity with the verdict. No question arises here in that respect. The only right to judgment is that given by the verdict, and to such only as it permits.

The motion for a new trial should be denied and judgment ordered for the plaintiff on the verdict.

SMITH, P. J., BARKER and HAIGHT, JJ., concurred.

Motion for new trial denied, and judgment ordered for the plaintiff on the verdict.