———o-o-o———

## Clarke *vs.* Hughes.

An agreement for the sale of land by the plaintiff to the defendant, recited that the plaintiff's father, in 1797, granted and to farm let to J. W. the premises agreed to be conveyed, and that the plaintiff, as the devisee of his father, was the owner of the reversion in fee simple of the same. The plaintiff then agreed that he would, on receiving from the defendant $2000, in ten annual installments with interest, give him a deed of the farm, with warranty, saving and excepting any right or title existing under the lease to J. W. The defendant covenanted and agreed to pay the $2000; and it was mutually agreed that the defendant should immediately *take possession* of the farm, and pay the taxes. In an action brought to recover from the defendant an installment of principal and interest; *Held* that both parties having joined in the recital that the plaintiff was the owner of the *reversion*, and consequently that he was not entitled to the immediate possession of the farm, the plaintiff might recover the consideration agreed to be paid, without showing that he had given the defendant possession of the farm.

*Held also,* that by the terms of the agreement the plaintiff did not covenant to *give* or *deliver* possession, but the defendant was to *take* it; that he, and not the plaintiff, was to be the actor.

*Held further,* that it was no defense to the action to alledge that there was an adverse possession, as to a part of the farm, without stating what persons were in possession, or that the tenants had any title, or setting forth any facts showing their possession to be adverse.

As against a reversioner, there cannot be an adverse possession. It can only exist as against a person entitled to the possession.

Clarke *v.* Hughes.

THIS action was commenced upon an agreement made by and between the parties, on the 13th day of February, 1849, in which it was recited that by an indenture bearing date the 20th day of July, in the year 1797, George Clarke, the father of the plaintiff, demised to John Woolsey a certain farm in the county of Montgomery, known as farm number 15 in lot 19, in Corry's patent, in the town of Charlestown, and that the plaintiff as the devisee of his said father, was then the owner of the reversion in fee simple of the said farm, and had offered to sell the same, and the rents, issues and profits thereof, to the defendant, and thereby the plaintiff agreed that he would, on receiving from the defendant the sum of $2000, in certain annual installments, with interest, the last of which was to be paid on the first day of April, in the year 1859, give a deed of the said farm, warranting and defending him, his heirs and assigns, in the quiet and peaceable possession of the said farm against all persons lawfully claiming the same, saving and excepting any right, title or interest, claim or demand that might exist by virtue of the said indenture, or which had been created by acts of those holding said farm under the same : and the defendant thereby agreed with the plaintiff that he, the defendant, would well and truly pay to the plaintiff the said sum of two thousand dollars and the interest thereon, as above mentioned ; and it was mutually agreed between the parties that the defendant should immediately take possession of the said farm and pay the taxes. The action was brought to recover from the defendant an installment of principal and interest claimed to have become due on the 1st of April, 1850.

The defendant in his answer, amongst other things, alledged, in substance, that George Clarke, the father of the plaintiff, never was the owner of the reversion in fee of the said farm, nor was the plaintiff, at the time of the execution of the said alledged agreement, the devisee of his said father, nor was the plaintiff, as such devisee of his said father, owner in fee simple of said farm ; but, on the contrary, neither the plaintiff nor his father before him, ever owned or possessed any right, title or

interest whatever, in the said farm, &c. And the defendant, for a further answer, alledged that the plaintiff never gave the defendant possession of the farm and premises named in the complaint, and that the defendant had been wholly unable to gain possession thereof. That at the time of making the said agreement, the farm, or a large part thereof, was in the possession of persons holding the same adverse to the plaintiff, and all other persons, and the defendant had been excluded therefrom. The .defendant further answered that the grant by George Clarke to John Woolsey, in 1797, had not expired, and that when the said agreement was made, 25 acres thereof was held under that grant by Judah Holmes, who was then in possession thereof, and who afterwards assigned the same to W. H. Conover, and that he had since held possession thereof, and the defendant had been unable to gain possession of the twenty-five acres.

The plaintiff demurred to various parts of the answer, for insufficiency, and set out a number of causes for the demurrer. The issue of law was tried before Mr. Justice Paige, who allowed the demurrer to that part of the answer which set up a want of title in the plaintiff, and overruled the demurrer as to other parts of the answer. Mr. Justice Paige held "that the plaintiff must show that the covenant as to possession is performed, before he can sue for the purchase money. The defense of adverse possession of a part of the lot, is a good defense." The plaintiff appealed from that part of the judgment overruling the demurrer.

*Richard Cooper*, for the plaintiff.

*Thomas B. Mitchell*, for the defendant.

*By the Court*, CADY, J. The words in the agreement, "And also, that the said party of the second part shall take immediate possession of said farm, and shall pay all taxes of whatsoever kind, that may be assessed on the same, or that may be taxed or assessed to the said party of the first part, for or on account thereof," were construed by Mr. Justice Paige as a cove-

nant on the part of the plaintiff that he would immediately give the defendant possession of the farm, and that he was bound to show a performance of that covenant before he could be entitled to recover any part of the consideration. The agreement ought to have a reasonable construction, so as not to give to any part of it a meaning that the parties could not have intended. The agreement commences by a recital that the plaintiff's father, in 1797, granted, and to farm let to John Woolsey, farm number 15 in lot 19, in Corry's patent, and that the plaintiff, as the devisee of his father, was the owner of the reversion in fee simple of the said farm." Both parties joined in this recital that the plaintiff was the owner of the *reversion*, and consequently that he was not entitled to the immediate possession of the farm, but was seised of the reversion, and entitled to the rents, if any were reserved, and that seisin of the reversion, and a right to take possession of the rents he could transfer ; and it is well known that rents are taxable, and the taxes must be paid. The agreement contained a covenant on the part of the plaintiff that on receiving $2000 and the interest thereon, he would give to the defendant a deed of the farm, warranting and defending the defendant in the quiet and peaceable possession of the said farm against all and every person lawfully claiming the same, saving and excepting any right, title, interest, claim or demand that might exist, by virtue of the said indenture, or have been created by the acts of those holding said farm under the same. The parties did not expect that the deed would be given before 1859, and then the warranty was not to be against any estate or claim under the indenture from the plaintiff's father to John Woolsey. All the defendant contracted for, was the reversion and its incidents. A grant of the reversion would carry the rents. Is it probable that the plaintiff, who would not agree at the end of ten years, to warrant against any claim under the grant made by his father to John Woolsey, would warrant that the defendant should have immediate possession of the farm ? The words of the covenant are " that the said party of the second part shall take immediate possession of the said farm, and pay all taxes, &c." Did the defendant by those words,

Clarke *v.* Hughes.

intend to bind himself to take possession of the farm, although it might be lawfully sold under the grant to` John Woolsey? He covenanted to take possession and pay taxes; the plaintiff did not covenant to *give* or deliver possession. The defendant, not the plaintiff, was to be the actor, he was to *take* possession. The agreement is that the defendant " shall take possession and shall pay all taxes. The plaintiff no more covenanted that the defendant should take possession than that he should pay the taxes: both branches of the covenant were to be performed by the defendant, and for the benefit of the plaintiff. It was important to him that the taxes should be paid, and that the farm should be occupied by some one; but to say that the plaintiff covenanted that he would give the defendant immediate possession, although it might be lawfully possessed by some person claiming under the indenture of John Woolsey, would be imputing to him a gross absurdity. Taking the whole agreement together, I cannot believe that the plaintiff intended to covenant that he would give to the defendant possession of the farm.

The learned justice who tried the cause, held that the defense of adverse possession of a part of the lot was a good defense. This part of the opinion must refer to the part of the answer in these words: " But on the contrary, this defendant avers that at the time of said alledged agreement between plaintiff and defendant, said farm, or a large part thereof, was in possession of persons holding or claiming the same adverse to the plaintiff and all other persons, and the same has so remained possessed up to the time of commencing this suit, to the exclusion of the defendant." And what is here alledged was regarded as making out a defense. But does the code allow such pleading? Who were the persons in possession? The name of no person who was in possession is given. It is not alledged that the persons in possession had any title—no fact is alledged showing their possession adverse. The facts necessary to show that a possession is adverse, are stated in 2 R. S. 294, §§ 10, 11, 12. The answer was insufficient, because the facts necessary to show that the possession was adverse, were not alledged in the answer.

Again, the plaintiff only claimed the reversion, and as against

a reversioner there cannot be an adverse possession. An adverse possession can only be against a person entitled to the possession. There could be no such adverse possession as to make it unlawful for the plaintiff to sell his reversion. All persons except idiots, persons of unsound mind, and infants, seised of, or entitled to any estate or interest in land, may alien such estate or interest, &c. (1 *R. S.* 719, § 10.) The adverse possession alledged in the answer, formed no defense, and the demurrer ought to have been allowed as to that part of the answer.

The defendant's covenant to pay, was an independent covenant. He covenanted to make ten payments before he was entitled to a deed. He could not legally demand a deed until after the whole purchase money was paid. The whole sum of two thousand dollars was to be paid for the reversion or farm. I am, therefore, of opinion that judgment should be given for the plaintiff on the demurrer.

Judgment for the plaintiff.

[WARREN GENERAL TERM, May 3, 1852. *Willard, Cady, Hand,* and *C. L. Allen,* Justices.]