34  425
94  428

## NORTH vs. HAMMER and others.

*Title by adverse possession.*

1. Where the occupant of land entered into possession under *claim of title exclusive of any other right*, founding such claim upon a sheriff's deed upon a sale on execution against the original owner, and had been in continual occupation of the premises *under such claim* for ten years, and had improved the land and protected it by a substantial inclosure during the whole of that period: *Held*, that an action by the original owner, or one claiming under him (in this case a mortgagee), to assert his right to the land, was barred by the statute.
2. If, by reason of defects in the proceedings, the title of the judgment debtor was not in fact divested by the sale on execution, this does not affect the application of the statute.

APPEAL from the Circuit Court for *Calumet* County.

The action was for the foreclosure of an equity of redemption in certain lands in Calumet county. The complaint sets up the making and delivery of a deed by one of the defendants, Sampson, to the plaintiff, August 19, 1851, upon the lands in controversy, as security for a debt; the delivery back, at the same time, to the grantor, of a defeasance in the form of a bond under seal for a reconveyance, the grantor remaining in possession. It also alleges certain mistakes in the deed and

bond, and asks that they be reformed; that Sampson, from January 1, 1850, to January 1, 1856, was the head of a family and occupied and used said land for agricultural purposes, his house being on the west half of the lot; that one Edmund Delaney claims to have recovered a judgment in justice's court, November 28, 1850, in said county, against Sampson, for $32.65 and costs, and to have filed a transcript of the same in the office of the clerk of the circuit court in Calumet county, December 12, 1850, which judgment never was in fact docketed in said county; that on August 14, 1851, said Delaney caused to be issued an execution out of said circuit court, purporting to be based on said judgment, but which was in fact issued unlawfully, and not supported by any judgment; that the sheriff of said county, in November, 1851, sold said premises as an entirety to said Delaney (as he pretended), without notice to Sampson or demand of him to select his homestead; that at the time of the levy and sale, the sheriff and Delaney had notice of Sampson's homestead rights, and of the said deed and bond; that at such pretended sale the sheriff only purported to sell such interest as Sampson had December 12, 1851; that on June 15, 1854, the sheriff executed and delivered to Delaney a sheriff's deed of the premises sold, and afterwards Delaney conveyed to the defendant *Esther Hammer*, under whom the other defendants claim some interest; that the defendants acquired their interest with knowledge of plaintiff's rights, with notice of Sampson's homestead rights, and of the failure of the sheriff to notify him of the levy, and that the execution was issued without authority, etc. The complaint asks, among other things, that an account may be taken of the amount due, and that the rights of the defendants in the premises may be foreclosed.

The defendants *John C. Hammer* and *Esther Hammer* answered, denying most of the allegations of the complaint, and admitting the issuing of the execution, the levy, and the sheriff's deed. Their second defense appears in the opinion.

North vs. Hammer and others.

The evidence showed, and the court found as matters of fact, among other things, that the land in question was the homestead of Sampson during the times named in the complaint, and that he never had made any claim to the sheriff that such land was his homestead.

The plaintiff, among other proofs, introduced a certified copy of the sheriff's deed to Delaney, dated June 15, 1854; the execution on which this sale was made; the return of the sheriff thereon; and the judgment docket of the circuit court for Calumet county, on which one judgment against Sampson was mentioned, but no mention was made of any *transcript* from the justice's docket. These proofs were introduced to show that the execution was not issued on any judgment recorded in the circuit court; that the return was defective, and did not show facts sufficient to support a valid sale; and also that the deed only purported to convey the interest which Sampson held on December 12, 1851.

The testimony tended to show, and the court found, that on the 15th of January, 1856, Delaney duly conveyed by deed the land in question to *Esther Hammer* for its full value, and that she immediately took possession of the same, claiming title under the deed exclusive of any other right, and occupied the same continuously under such claim until the commencement of the action; that at the time of this purchase and conveyance, she had no notice that the plaintiff had any claim upon the land, except such constructive notice as was furnished by the record of the deed from Sampson to him; that she had no knowledge or notice that Sampson was holding possession of and claiming title to the same under the bond for a deed given by North; and that she believed that Delaney had a perfect title to the land.

A second deed, from the sheriff of Calumet County, John Dean, was introduced as evidence. This was dated February 21, 1855, and contained the same recitals as the former sheriff's deed, except that it purported to convey all the interest which

the judgment debtor had on December 12, 1850, or thereafter, instead of December 12, 1851, or thereafter.

The court further found, among other things, the making and delivery of the deed and bond first named in the complaint, and that they were intended as security for the payment of money; the recovery of judgment in the justice's court; the filing and docketing of a transcript of the same in the circuit court on December 12, 1850; the issuing of the execution; the sheriff's sale; and the execution of the two sheriff's deeds before mentioned.

Upon the facts so found, the court held that the plaintiff was not entitled to any relief against the defendant *Esther Hammer* and the defendants claiming under her; and it ordered that as to them the complaint should be dismissed. Judgment accordingly; from which the plaintiff appealed.

*E. S. Bragg*, for appellant:

1. There is no evidence for the defendant of the recovery of a judgment by Delaney in a justice's court. This failure of proof is not helped by the statute creating certain presumptions in favor of sheriff's deeds. 2 Tay. Stats., p. 1610, § 123. This statute does not relate to other judgments than those recorded in courts of record. 2. There was no proof that any execution had ever been issued on the judgment, and a return made of *nulla bona*, as provided by the statute then in force. R. S. 1849, p. 469, sec. 185. 3. If it might be presumed from the deed in any case that a judgment had been rendered, there can be no such presumption in this case, as the plaintiff showed affirmatively, by the judgment record, that there was no judgment docketed by transcript as recited in the deeds. 4. The deed to Delaney only conveyed the interest which Sampson had Dec. 12, 1851, four months after the plaintiff acquired his interest. The second sheriff's deed was of no force. When the sheriff has made his deed, his power is exhausted, and he has no authority to make another, without application to the court on notice. 5. The land sold on execution was the debtor's homestead, and

the sale was void. Const. of Wis., art. I, sec. 17; *Smith v. Omans*, 17 Wis., 396; *Howe v. McGivern*, 25 id., 525; *Pinkerton v. Tumlin*, 22 Ga., 165; 10 Cal., 17; *Kent v. Agard*, 22 Wis., 150; *Herrick v. Graves*, 16 id., 167; *Collett v. Jones*, 2 B. Mon., 19; *Vaughan v. Thompson*, 17 Ill., 78; *Murphy v. Crouch*, 24 Wis., 365. 6. The defendants had knowledge of the plaintiff's claim, both from the recorded deed to plaintiff, and from Sampson's possession. *Hughes v. U. S.*, 4 Wall., 236. 7. The statute of limitations has no application to this case. The relation existing between Sampson and the plaintiff was that of mortgagor and mortgagee. The deed and bond make a mortgage without any parol proof. Both the bond and deed are under seal, and the record of the deed, with the possession of the grantor, is sufficient evidence that the grantor was but a mortgagor claiming under his defeasance. *Hughes v. U. S.*, 4 Wall., 236. That a deed is a mortgage, where the consideration is security for a debt merely, without any sealed defeasance, will not be disputed; and in such a case there must be an open, notorious and avowed denial of the rights of the owner of the equity of redemption, in order to commence the running of the statute against him. *Knowlton v. Walker*, 13 Wis., 273. The same rule holds in this case, where the defendants entered under the title of the mortgagor, which is not an entry of such an adverse character as to put the statute in motion against the plaintiff.

*Gillet & Taylor*, for respondents;

1. The sheriff's sale of the homestead was not void, because the owner at no time made claim to any part of the premises sold as a homestead. Tay. Stats., 1549, §§ 25–27; *Herrick v. Graves*, 16 Wis., 157; *Myers v. Ford*, 22 id., 139; *Bennett v. Child*, 19 id., 367. 2. The recital in the first sheriff's deed, as to the sale of such interest as Sampson had on December 12, 1851, was clearly a mistake, which was corrected by the second deed. 3. The sheriff's deed is *prima facie* evidence that Sampson's title was conveyed to Delaney. Tay. Stats., 1610, § 123;

*Ehle v. Brown,* 31 Wis., 405; *Chase v. Whiting,* 30 id., 544. This presumption is not overcome by any evidence in the case. 13 Wis., 233; 16 id., 223.    3. The defendant *Esther Hammer* entered into possession of the land in question in 1856, under a claim of title hostile to every other claim; her title is adverse to the plaintiff's, and he is barred by the statute of limitations. Tay. Stats., 1626, § 22.   This action is not like the ordinary foreclosure of a mortgage; because matters resting in *parol only* must be proved in order to establish the mortgage right.   Nor is this action, upon the facts alleged, an action upon an instrument under seal of the defendants. All that gives form or substance to it rests in parol.    4. The action is barred as to the defendant *Esther Hammer* and those claiming under her, by the provisions of secs. 5 and 6, ch. 138, R. S.   *Stevens v. Brooks,* 24 Wis., 326; 10 Wheat., 152; 2 Peters, 201, 5 Peters, 485; 15 Peters, 233; *Sydnor v. Palmer,* 29 Wis., 249–50; *Jackson v. Smith,* 13 Johns., 406; *Jones v. Billstein,* 28 Wis., 221.    5. In order to make the possession of defendants adverse, it was only necessary that they entered in hostility to the plaintiff's claim. 24 Wend., 587, 603; 2 Barb., 383, 402; 4 Sandf. Ch., 633.   It is immaterial that the plaintiff was ignorant of defendant's claim. 20 Johns., 33; 5 Wend., 30; 17 id., 202; 5 Barn. & Cress., 149; 24 Wend., 587.    A quitclaim deed is sufficient to found an adverse title upon.   4 Wis., 1; 7 Hill, 476; 4 Barb., 419; 7 Cow., 353; 18 Johns., 355.   It is not necessary to constitute an adverse possession, that there should be a *rightful* title.   9 Johns., 174; 10 id., 356; 13 id., 118; 18 id., 40; 8 Cow., 589; 6 Wis., 527, 528; 25 id., 460; 33 Barb., 277; 5 Denio, 426; 13 Barb., 147; 7 Wheat., 60; 9 Cow., 530; 24 Wend., 87. The possession of *Esther Hammer* was adverse to those claiming under Sampson, as well as to him.    4 Peters, 504; 5 id., 429; 18 Johns., 362; 12 Wend., 602–675.

COLE, J.   In the disposition of this case we shall confine ourselves to a consideration of a single question, which pre-

sents an insuperable bar to the relief asked by the plaintiff, so far as these defendants are concerned.

The defendants *John C.* and *Esther Hammer* set up in their answer as a second defense to the action, that on the 17th of January, 1856, *Esther Hammer* entered into the possession of the west half of lot 50 under claim of title exclusive of any other right, founding such claim on a deed from Edmund Delaney and wife as a conveyance of the lands to her; and that she has been in the continued occupation of said lands so conveyed by said deed, under such claim of title, for more than ten years last past and next before the commencement of this suit, during all which time the lands have been cultivated and improved by her, and have been protected by a good and substantial inclosure.

The court below found as a matter of fact that this defense was established by the evidence offered on the trial, so as to bring the case fully within the ten years limitation for barring the action. Our statute enacts that whenever it shall appear that the occupant, or those under whom he claims, entered into possession of any premises under claim of title exclusive of any other right, founding such claim upon some written instrument as being a conveyance of the premises in question, and that there has been a continued occupation and possession of the premises included in such instrument, or some part thereof, under such claim, for ten years, the premises so included shall be deemed to have been held adversely, and the right of the real owner to such lands shall be barred. Sections 5 and 6, ch. 138, R. S. Now, as the evidence is entirely conclusive upon the point that the defendant *Esther Hammer* entered into the possession of the west half of lot 50 in 1856, under a claim of title exclusive of any other right, founding such claim upon a deed from Delaney to her of the premises, and that this possession has continued without interruption for the whole period prescribed by the statute, her title must be deemed good even as against the original owner. This is the

plain meaning and obvious effect of the provisions above cited.

It appears that in 1850 the land in controversy was owned by one Sampson. The plaintiff claims that in August, 1851, Sampson gave him a deed of the land, as security for a debt, he giving back a bond for the reconveyance of the property on payment of his debt in August, 1852. On the part of the defendants it is claimed that Delaney recovered a judgment before a justice of the peace against Sampson; and that in December, 1850, a transcript of this judgment was filed in the office of the clerk of the circuit court of Calumet County, and was duly docketed on that day; that in August following, and before the execution of the deed by Sampson to the plaintiff, an execution was issued upon such judgment out of the circuit court, and the west half of lot 50, with other lands, was sold to Delaney, who obtained a sheriff's deed for the same in 1854.

Various objections are taken to the sale on the execution, and to the title derived through the sale; and it is claimed that the interest of the judgment debtor was not divested by it. But we shall not dwell upon these objections to determine whether they are valid or not; because, in the view we entertain of the case, the bar is effectual although the defendant *Esther* may not have acquired a rightful title under the execution sale. In order to constitute adverse possession under the statute, it is not necessary that the title under which the party claims should be a good one. It is sufficient that a party enters into possession under claim of title exclusive of any other right, founding such claim upon some written instrument. It is not essential that the claim upon which an adverse possession is founded is made upon an instrument which conveys a valid title. If adverse possession could only be based upon an instrument which conveyed a good and perfect title, it is apparent that the statute would be of little value. Of course the rule is that the party in possession must claim the entire title, to the exclusion of all others, and he must not admit that

North vs. Hammer and others.

he is in possession in subordination to a higher title in another. But where this is the character of the claim, it is immaterial how defective the proper title may be upon which the adverse possession is founded. Our statute upon this subject is substantially the same as that of New York; only the period of limitations in that state is twenty years. And the courts in that state have held that to constitute an adverse possession it is not necessary that the title under which the party claims should be a good one, but it must be under color and claim of title exclusive of any other right, and the possession must be adverse and hostile to the one entitled to the possession. *Smith v. Burtis*, 9 Johns., 174; *Smith v. Lorillard*, 10 id., 337; *Jackson v. Ellis*, 13 id., 118; *Jackson v. Wheat*, 18 id., 40; *Jackson v. Newton*, id., 355; *Jackson v. Woodruff*, 1 Cowen, 276; *Northrop v. Wright*, 7 Hill, 476; *Roseboom v. Van Vechten*, 5 Denio, 424; *Clarke v. Hughes*, 13 Barb., 147; *Mosher v. Yost*, 33 id., 277. In *Northrop v. Wright*, Chancellor WALWORTH says: "To constitute an adverse possession of land, an entry under color of claim of title is sufficient; and it is wholly immaterial whether the title afterwards turns out to be valid or invalid. Nor is it material whether the conveyance under which the entry is made does or does not contain covenants of warranty. Where the sheriff, therefore, sells lands upon execution, of which land the judgment debtor is in possession, claiming under a devise in fee, and the purchaser takes possession under the sheriff's deed, and continues in possession for more than twenty years, by himself or his grantees, and there is nothing in the circumstances to induce a belief that the purchaser at such sale knew the judgment debtor had no title, the legal inference is, that the possession is adverse to the whole world. And unless something afterwards occurs to change the adverse character of the possession, the right of the real owner is barred. And the result will be the same where the entry is under color of a conveyance from the sheriff, although such conveyance is not upon its face sufficient to convey the legal title to the land.

(*Jackson v. Newton*, 18 Johns., 355.) And the fact that the purchaser from the sheriff is afterwards induced to doubt the validity of his title under the sheriff's sale, where he continues in possession under the same, will not destroy the adverse char- acter of that possession." pp. 488, 489. See also *Stevens v. Brooks*, 24 Wis., 326; *Jones v. Billstein*, 28 id., 221.

The above remarks of the chancellor are strictly applicable to the facts of this case. For the testimony very clearly shows that *Esther Hammer* purchased the tract of land claimed by her, and of which she has been in possession since 1856, of Delaney, paying therefor a full consideration. She took the deed as conveying to her the full title, and entered into pos- session claiming the land as her own absolutely, and justifies and maintains her possession by virtue of this conveyance. Her possession has been hostile from the first, not acknowledg- ing any right of the plaintiff or of Sampson, or of any other person, in the land; and if there is any efficacy in the statute, her title has ripened into a perfect one, whatever defect there might have been in the execution sale. If she knew of the plaintiff's claim to the land, either at the time or after she pur- chased of Delaney, she denied that this claim was of any va- lidity, and never acknowledged it in any manner. It is as- sumed that she only purchased an equity of redemption, and subject to the plaintiff's mortgage. But it seems to us that this assumption is opposed to all the facts and proofs in the case. For the evidence conclusively shows that she supposed she was getting a perfect title — that the interest of Sampson had been divested by the sheriff's sale; or at all events that the conveyance from Delaney to her carried the fee, and not mere- ly the equity of redemption. And since the character of her possession has been hostile and adverse from its inception, under this deed, the statute of limitations has run in her favor, even if there was a defect or irregularity in the sale upon the exe- cution against Sampson.

These views are decisive of the case. The judgment of the circuit court must be affirmed.

*By the Court.*—Judgment affirmed.