## COWLY *v.* MONSON.

(*Circuit Court, W. D. Wisconsin.* February 9, 1881.)

1. ADVERSE POSSESSION—REV. ST. OF WISCONSIN, § 4211.

  Ten years' occupation in good faith, under claim of title, is suffi-
  cient to give a good title by adverse possession, under section 4211 of
  the Revised Statutes (1878) of Wisconsin.—[ED.

Ejectment.

*Wm. B. Jarvis,* for plaintiff.

*Thomas & Fuller,* for defendant.

BUNN, D. J.   This is an action of ejectment, brought in the
circuit court for Crawford county, Wisconsin, to recover 80
acres of land, to-wit, the S. ½ of N. W. ¼ of section 32, town
11, range 6 west, being in Crawford county.   Defence, ad-
verse possession under the statute.   The case was removed
to this court on application of the plaintiff, and a jury waived
by stipulation of the parties.

The plaintiff, to sustain his case, introduced a patent of
the land in question from the United States to himself, dated
April 16, 1856.   The defendant, to sustain his case and show
title in himself, introduced a tax deed issued by the county of
Crawford to one Peter Elverson of the land in suit, dated
November 9, 1866, and recorded on the same day in the office
of the register of deeds for Crawford county; also a quitclaim
deed of the land executed by said Peter Elverson, the grantee
in the tax deed, to him, Mons Monson, the defendant, dated
November 12, 1866, and recorded September 27, 1869.   It
also appears from the testimony of the defendant and Elver-
son that the defendant purchased the land from Elverson
at the time the quitclaim deed is dated, November 12, 1866,
with the intention of making a farm of it, and paid the sum
of $140.   In June of the next season (1867) he took actual
possession under his deed from Elverson, and broke and
grubbed some on the land, and in November of the same
year built a house upon the land, and in October of the next
season moved in with his family; that since that time he

has lived on the land with his family, and fenced it and built a barn and occupied it as a farm until now, when the improvements are worth $700 or $800; and that he has paid the taxes on the land during his occupancy, and all the while ever since he first entered on the land claimed the exclusive title and right of possession under and by virtue of the tax deed to Elverson and Elverson's deed to him.

The defendant testifies as follows: "I bought the land of Peter Elverson in November, 1866. This is the deed. He gave me his tax deed at that time. I broke four acres in June, 1867. This was on both 40's. I did grubbing on the east 40. I hauled logs that were cut off the land to build a house. I built a house first and then a barn. Have improved between 25 and 30 acres for farming purposes. Am a man of family and live on the land. I moved on the land in October, 1868. Have lived there ever since. I have occupied the land all the time, claiming title and in good faith believing that I had good title to the land. I had the land surveyed. I was present with the surveyor and helped him survey it. I know the line between the two 40's. The house is on the east 40 and the barn on the west 40."

Elverson testifies to substantially the same facts. Previous to the time defendant entered on the land under the quitclaim from Elverson the land was wild, vacant, and unoccupied. This suit was begun by the service of summons on September 28, 1877.

The plaintiff's counsel makes various objections to the sufficiency of the tax deed: *First.* That the witnessing is not according to law in this, that the statute form requires the witnessing to be *"done in presence of,"* whereas in this deed the form observed is "in presence of," the word "done" being left out. The statute requirement is that the deed shall be substantially in the form prescribed, or other equivalent form. It is quite clear that the deed in this respect, there being two witnesses as the law requires, is sufficient. *Second.* That the acknowledgment is defective. But upon inspection I find the acknowledgment very full and in proper

form. *Third.* The amount for which the land sued sold, being $9.36, is too much; and the plaintiff's counsel has made a calculation to show that the land was sold for 16 cents too much. Though this, if true, might avoid the sale, if the defendant was relying on the deed and tax proceedings alone, it is clear the defect does not appear on the face of the deed itself. The plaintiff's counsel insists that there are nineteen instances in which the deed in evidence is defective as compared with the statute form; but, as I am unable to see much force in those defects which have been pointed out, it may be fair to conclude that there is not much more in the other 16 that have not been specially noted, and to which the attention of the court has not been called. I think the deed fair and valid on its face, and sufficient, *prima facie,* to convey a good title to the land.

The plaintiff, further to defend against the defendant's claim, is sworn as a witness and testifies that he paid the tax on the land for the year 1862, for which the sale was made on which the deed was issued; and he introduces a burnt and mutilated receipt, signed by J. P. Perret Gentil, county treasurer of Crawford county, and containing a description of this land, with other, but no date. About two-thirds, apparently, of the receipt are burned away; but the plaintiff swears it is the receipt for his taxes on this land for 1862. The defendant introduced witnesses who swear that they are acquainted with J. P. Perret Gentil's handwriting, and that in their opinion this is not his genuine signature. Plaintiff's witnesses testify they think it is; so that the evidence in regard to the payment of the taxes for that particular year leaves the question in some doubt. But, from the view I have taken of the case, I do not find it necessary to determine that question. It is claimed by plaintiff's counsel that inasmuch as the statute makes the tax deed of no validity when the taxes have been paid, there can be no adverse possession founded on a tax deed so illegally issued; and if none on the tax deed, then none on the quitclaim to defendant, which it is insisted is only a release or conveyance of no more or greater title than the grantee in the tax deed had. But I cannot accede to this

view. The section of the statute under which the defendant claims to have held the land adversely for ten years is as follows, (section 4211, Wis. Rev. St. 1878:) "When the occupant or those under whom he claims entered into the possession of any premises under claim of title exclusive of any other right, founding such claim upon some written instrument as being a conveyance of the premises in question, or upon the judgment of some competent court, and that there has been a continued occupation and possession of the premises included in such instrument or judgment, or in some part of such premises, under such claim for ten years, the premises so included shall be deemed to have been held adversely. * * * "

The conclusion I have come to is that the defendant makes a case of adverse possession under the statute. He has been in the actual and continued occupancy and possession of the land for ten years and upwards, immediately preceding the commencement of the action, claiming title in entire good faith under the recorded tax deed, and his conveyance from Elverson, exclusive of any other right. It is not at all necessary that these deeds of themselves should convey a good and perfect.title. If that were so, the statute would be of no effect whatever. Color of title is a title apparently good, although in fact it may be bad.

If the plaintiff can go back of the tax deed and the conveyance under it to Monson, and show facts *dehors* the record to defeat the deed, then the ten years' occupancy and possession under a written instrument, sufficient on its face to carry a good title, and which may be relied upon in good faith, as conveying a title, is of no avail. I do not see any room for doubt that the quitclaim deed itself, if relied upon, as in this case, as conveying a good title, may not constitute a good foundation for color of title and adverse possession. *Northrop* v. *Wright*, 7 Hill, 476. It is sufficient on its face to convey a good title, and all the title that could be conveyed by a warranty deed, from which it only differs in that there are no covenants in it.

There is not a particle of evidence, or a circumstance in

the case, to throw any doubt upon the actual good faith of the defendant in purchasing, occupying, improving, and paying taxes on the land for over thirteen years, and I think his title by adverse possession good. Finding, "Judgment for the defendant." *North* v. *Hammer*, 34 Wis. 425.