Learned, P. J.
This is an action in ejectment to recover a narrow strip of land, used and occupied by the defendant and its predecessors for about forty-five years, for its roadway and tracks.
On the trial the plaintiff relinquished all claim, except to so much of the land as is included in the lot marked K. This lot is the last of several described in a deed dated-March 14, 1859, from Derrick Clute and wife to plaintiff, and in a deed, dated March 29, 1865, from plaintiff to Copley and Miller.
Nicholas Clute died in 1833, claiming to be the owner of lot K. and having been in possession for many years. By his will he gave land (including lot K.) to Derrick Clute for life, with the remainder in fee to plairitiff, the son of Derrick.
Derrick went into possession and so remained until the Schenebtady and Troy R. R. Co. took possession of the strip in ques *118 tion, in 1841, and he remained in possession of the residue until he executed the aforesaid deed to plaintiff, in 1859.
Plaintiff remained in posession of the said residue until he •executed the aforesaid deed to Copley and Miller, in 1865.
Derrick died July 14, 1868. The plaintiff claims in his complaint to have become owner of the premises in question, upon the death of Derrick.
In 1841 proceedings were taken by the Schenectady and Troy Railroad Company, before the County Judge of Schenectady county, and the County Judge of Albany county, to acquire title to the strip in question, under chapter 242, Laws of 1836. Part of the strip was in each county.
Such proceedings were had that the property was appraised, and the appraised value was ordered to be paid into a bank. In the proceedings in Schenectady county the money was to be paid to the credit of Derrick and the plaintiff. In Albany county to the credit of Derrick. It would seem that the money was deposited.
The petitioners, the same year, went into possession by virtue of the final order in these proceedings. Derrick seems never to have disputed their title; the railroad company therefore, were holding adversely to Derrick from 1841, claiming under a title. 2 R. S. m. p. 739, section 147. Dawley v. Brown, 79 N. Y., 390.
In 1873 the plaintiff, claiming as remainderman after the death of Derrick, brought this action, insisting that his remainder had never been acquired by these proceedings.
In the conveyance which plaintiff executed to Copley and Miller, in 1865, lot K. is described by courses and distances. Then follow these words:
Containing 16 acres, 1 rood, and 13 perches of land exclusive of 1 acre, 1 rood, and 32 perches belonging to the railroad.
On the former appeal the question was discussed, whether these words made an exception of the land occupied by the railroad, or whether the words “ exclusive” etc., applied only to the number of acres. We were of opinion that they did not except the railroad land; but that they only indicated how many acres there were in the lot, excluding the railroad land. We are still of that opinion; a deed is to be construed most strongly against the grantor. Here is no express exception in the description; and the description includes the railroad land. When the number of acres is stated, the grantor only explains that, exclusive of the railroad land, there are so many.
By the act of incorporation the company is to become possessed, during the continuance of the corporation. Heard v. Brooklyn, 60, N. Y., 242.; Heath v. Barmore, 50 N. Y., 302.
The deed provides that if the railroad company shall remove its track from the said land, then the land shall become the property of the grantees. This, though inaccurately expressed, *119 shows that the plaintiff, the grantor, did not intend to except this land from his conveyance; but that all bis rights therein were to go to the grantees. The grantor’s reservation of a claim against the N. Y. C. R. R. Co., for locating their track through the land, was not a reservation of the land, whatever was meant. That railroad company did not make the location of the track. This was the act of the Schenectady and Troy Railroad Company. But if by the success of the plaintiff’s action against the N. Y. C. R. R. Co., it should be compelled to remove its tracks, then the land would, according to plaintiff’s deed, become the property of the grantees therein.
At the time when he executed the deed to Copley and Miller, the plaintiff’s claim is that he was entitled to a remainder in the lands occupied by the railroad company, after the death of his father. Now if he had intended to except or reserve his interest in that part of the lands which he was about to convey, he could have expressed his meaning easily. But in such case, he would never have inserted the clause that that land was to revert to the grantees, if the railroad company should remove their track. And the grantees did not intend that their grantor should retain a strip through their land, while they were willing to take the land subject to such rights as the railroad company had acquired.
But again, it is urged that assuming that the deed from plaintiff to Copley and Miller, by its terms, conveyed the land in question, such conveyance would be void under the section of the Revised Statutes above cited.
In considering this question we must remember that there were two estates in the land, that of Derrick for his life, and that of the plaintiff in fee in remainder. The railroad company was in actual possession from 1841, claiming under a title adverse to Derrick. Derrick, then, could not convey by his deed of 1859, his life estate to the plaintiff in that part of the land actually in possession of the railroad company. And indeed the plaintiff does not claim to have acquired Derrick’s life estate in this strip of land. For his complaint alleges that he became owner in fee, and entitled to possession of the land in question upon the death of Derrick.
At the time, then, when the plaintiff executed his deed to Copley and Miller, assuming his title to be as he claims, he was only a remainderman of the premises; and the life estate was still in existence, held by the railroad company, adversely to Derrick, and having been so held by the company or its predecessors for over twenty years..
The question then is, was the land then held adversely to the plaintiff, so as to prevent him from conveying his remainder. This question was decided in Christie v. Gage, 71 N. Y., 189; where it was said, that where a tenant for life executes a deed *120 in fee and tlie grantee goes into possession, a conveyance by the heirs during the continuance of the life estate would not be void under the Champerty Act, although the grantee of thelife tenant was in possession claiming under a grant purporting to be a grant of the fee.
That applies to this present case. The R. R. Co. were in possession claiming under proceedings which purported to convey a fee or title during the continuance of the company. They had acquired, however, in fact (as plaintiff claims), only the life estate of Derrick during the continuance of that life estate, the plaintiff being (if he had any title) the remainderman, might convey his remainder without violating the Champerty Act. And this must be so. For as he' was not then entitled to possession, the possession of the R- R. Co. was not adverse to him. Grout v. Townsend, 2 Hill, 557: Clarke v. Hughes, 13 Barb., 151.
That this must be so follows from another consideration. If the possession of the R. R. Co. was adverse to plaintiff in 1865 when he executed his deed; then it was adverse in 1841, when the R. R. Co. went into possession. Hence he has now lost his title by this adverse possession of moré than forty years, if the Company held adversely to him in 1865.
With these views we need not examine the other questions in the case.
Judgment reversed, new trial granted, costs to abide event.
Bockes J., concurs, Landon not acting.